Page 1

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

SAN DIEGO COUNTY EMPLOYEES            Main Case No.

RETIREMENT ASSOCIATION,               24-1409

       Appellee,

              v.

JOHNSON & JOHNSON, ET AL.,

       Appellants.

- - - - - - - - - - - - - - - - - - -x

            United States Court of Appeals

            for the Third Circuit

            601 Market Street

            Philadelphia, PA 19106-1790

            March 11, 2025

            11:30 AM

B E F O R E:

HON. PATTY SHWARTZ, HON. L. FELIPE RESTREPO, and HON. CINDY K.

CHUNG

U.S. CIRCUIT JUDGES

Page 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19   Transcribed by:  Megen Strand

20   eScribers, LLC

21   7227 North 16th Street, Suite #207

22   Phoenix, AZ 85020

23   (800) 257-0885

24   operations@escribers.net

25

Page 3

```
 1
 2   A P P E A R A N C E S:
 3   SIDLEY AUSTIN LLP
 4        Attorney for Appellant
 5        One South Dearborn Street
 6        Chicago, IL 60603
 7
 8   BY:   ROBERT N. HOCHMAN, ESQ.
 9
10
11   ROBBINS GELLER RUDMAN & DOWD LLP
12        Attorney for Appellee
13        655 West Broadway
14        Suite 1900
15        San Diego, CA 92101
16
17   BY:   JOSEPH D. DALEY, ESQ.
18
19
20
21
22
23
24
25
```

1            P R O C E E D I N G S

2            JUDGE SHWARTZ:  The Court will call its argument for

3   this morning, San Diego County Employees Retirement Association

4   v. Johnson & Johnson, Appellate Number 24-1409.

5            MR. HOCHMAN:  Good morning, Your Honors.  May it

6   please the Court, Rob Hochman for Johnson & Johnson.

7            This case is fundamentally about how both the law

8   governing securities fraud class action maintains the

9   distinction between price reaction and price impact, and why it

10  must do so.

11           And just to level set on terms, as this Court is well

12  aware, stock prices move for lots of reasons.  Routine

13  movements in price.  Those are called price reaction.  Those

14  respond to new information about a public company's financial

15  health and prospects.  But sometimes prices move because the

16  public has learned something new about the company that shows

17  what the company had previously said about itself was false.

18           JUDGE SHWARTZ:  But in this instance, as I understand

19  your briefs, you suggest that the disclosures that the

20  Plaintiffs rely upon did not contain new information.

21           MR. HOCHMAN:  Correct.

22           JUDGE SHWARTZ:  And that suggests -- because it's not

23  new, that presumes that it, the information that they claim is

24  in these disclosures was already in the market.

25           MR. HOCHMAN:  Was, was priced through the market, yes.

1          JUDGE SHWARTZ:  And my question for -- I have two

2     questions:  One, where in the record is there evidence of when

3     that information that they claim was new was first disclosed?

4     The first question.

5          And the second is, do you have any evidence that the

6     market reacted to that information when it was first disclosed?

7     Because if it was not new now, it was new at some point.

8          MR. HOCHMAN:  Well, the fact that it -- well, let's

9     start with the second half of that question, because I want to

10    begin there because I think that's an important point.

11         The market doesn't necessarily have to react to every

12    bit of new information.  And the fact that the market doesn't

13    react to new information may mean that the information is not

14    corrective of any false statement.  It may mean that any false

15    statement at issue in the case is not material.  There are all

16    sorts of reasons why the price might not move, but let's -- so

17    let's focus --

18         JUDGE SHWARTZ:  Forget -- forget the reaction.  Tell

19    me where in the record --

20         MR. HOCHMAN:  Yeah.  So the place --

21         JUDGE SHWARTZ:  -- it is.

22         MR. HOCHMAN:  -- in the record -- so if you turn to

23    10 -- so we have, we created several charts.  I mean, and --

24         JUDGE SHWARTZ:  We saw them.

25         MR. HOCHMAN:  -- I'm going to focus here on the

Page 6

1    Reuters article because that's where --

2            JUDGE SHWARTZ:  Of the charts.

3            MR. HOCHMAN:  -- because that's where -- because

4    that's where most of the -- most of the argument is.

5            JUDGE SHWARTZ:  And I'm aware of the arguments that

6    the Reuters article, from your point of view, can be sourced

7    back to information in the marketplace.

8            MR. HOCHMAN:  Yes.

9            JUDGE SHWARTZ:  I want to go back in time.

10            MR. HOCHMAN:  Okay.

11            JUDGE SHWARTZ:  If the information in the disclosures

12    from J&J's point of view is not new now, meaning as early as

13    that September 2017, that first disclosure --

14            MR. HOCHMAN:  Yep.

15            JUDGE SHWARTZ:  -- that your adversaries point to, at

16    some point, it was in the market.

17            MR. HOCHMAN:  Yeah.

18            JUDGE SHWARTZ:  Okay.

19            MR. HOCHMAN:  Yeah.  And we -

20            JUDGE SHWARTZ:  And I know you point to two

21    disclosures that predate the September market -- or September

22    disclosure.  Is that when it was first disclosed, or was it in

23    the market at some date before that September 21-ish date?

24            MR. HOCHMAN:  Well, there's a lot of -- because

25    there's a lot of facts at issue in the Reuters article, what we

Page 7

1   did is we went through sort of chart, assertion by assertion

2   and identified where in the record -- whether it was previously

3   disclosed on websites, whether it was discussed in newspapers,

4   whether it was discussed in trial, in previous open court

5   trials.

6           JUDGE SHWARTZ:  We're completely --

7           MR. HOCHMAN:  And that's at 1086 --

8           JUDGE SHWARTZ:  Panel's completely aware of those

9   sources.

10          MR. HOCHMAN:  Yeah.

11          JUDGE SHWARTZ:  We're completely understand it.  My

12  question for you is, when was the first time the information

13  the Plaintiff say undermines the representations about the

14  safety of the product, when was it new?  Because at some point,

15  it was new from the theory of J&J.

16          MR. HOCHMAN:  Well, I mean, at least, I would say --

17  you could go -- you could go back certainly to the Herford

18  trial, which predates most of the disclosures, except for the

19  Bernstein law firm.  You have the Bloomberg story itself, which

20  was the basis of the Bernstein disclosure itself.  And that's

21  six days before, so I don't think you're anywhere -- there's no

22  disclosure that occurred in this case that wasn't preceded by

23  something else.  It's sort of a cascade of things coming

24  down --

25          JUDGE SHWARTZ:  Well, the first one, though --

Page 8

1              MR. HOCHMAN:  -- so I would say the -- I would say the

2     Bloomberg -- it couldn't have been any later than the Bloomberg

3     article upon which the Bernstein law firm relies.  In fact,

4     doesn't even rely, right?  It just points to.  And that's sort

5     of what's interesting about this case, right?  Because the

6     Bernstein -- I think the Bernstein disclosure --

7              JUDGE SHWARTZ:  I'm aware of -- we're aware of it.  I

8     think I want to focus you on -- I'm looking at -- you say

9     something's not new now.  It was new at some point.  You're

10    telling me it was sometime before September 2017-ish.

11             MR. HOCHMAN:  Yeah.

12             JUDGE SHWARTZ:  Is there anything in the market that

13    shows when that information first was put in the marketplace,

14    that there was a reaction to the disclosure?

15             MR. HOCHMAN:  So and that's why I began with the

16    second part because what -- and here's what happened with that

17    Bloomberg story.  This is a perfect example of how this works

18    in this case.  In Bloomberg, the Bloomberg story was first

19    identified actually as a corrective disclosure in this case.

20    Plaintiffs pled that originally.  They abandoned it.

21             Why?  Because there wasn't a price reaction to that.

22    Because the market had long since been aware, through

23    litigation that had preceded even that story, through

24    discussions, and reports, and all sorts of other information

25    whose -- market analysts whose job it is to follow things like

Page 9

1    talc litigation and its potential impact on J&J and all of

2    those stories.

3              So there wasn't a price drop at all that was material.

4              JUDGE SHWARTZ:  Was there a -- can you make the

5    representation at the time the Plaintiff's class made their

6    purchases, that the market already, at the time of the

7    purchase, at the very beginning of the class period, had

8    already absorbed the purported misrepresentations?

9              MR. HOCHMAN:  What the market had absorbed was exactly

10   what the price drops that they reflect are about, which is the

11   risk of potential talc litigation exposure that J&J faced,

12   certainly from September 2017 forward --

13             JUDGE SHWARTZ:  And you're saying that's not a --

14             MR. HOCHMAN:  -- and long before.

15             JUDGE SHWARTZ:  -- qualifying foreseeable risk of

16   information --

17             MR. HOCHMAN:  No --

18             JUDGE SHWARTZ:  -- that would affect the market?  Is

19   that your position?

20             MR. HOCHMAN:  So if you look at 493 to 95, what you

21   will find is that the Plaintiffs in this case tried to plead

22   this case, tried to say the false statement at issue in this

23   case was that we concealed the amount of risk connected with

24   talc litigation.  And the District Court said, no, we didn't

25   conceal any of that.  You can't plead that under the PSLRA.  So

1    that's out of the case.

2          JUDGE SHWARTZ:  Um-hum.

3          MR. HOCHMAN:  And so given that that's out of the

4    case, they can't come back in at class cert and try to

5    reintroduce the stock price drops as litigation rolls forward

6    and risk becomes materialized into sometimes big judgements.

7          JUDGE SHWARTZ:  I think that -- I think that argument

8    was really only pushed with the jury verdict, not the others.

9          MR. HOCHMAN:  Well, it's also --

10          JUDGE SHWARTZ:  Right?  Their position, as I

11    understand the Plaintiffs, is there are various disclosures

12    were reflecting the fact that there were misrepresentations

13    concerning the safety of the product.  I'm using that to

14    categorize, right?

15          MR. HOCHMAN:  That is the current -- that is the

16    current complaint right now, right.

17          JUDGE SHWARTZ:  Right.  And so --

18          MR. HOCHMAN:  But the world was well aware of all of

19    the facts that have been discussed in all of the corrective

20    disclosures that were -- that are at issue with respect to

21    that, that alleged false statement, but what the world wasn't

22    aware of and what the price continues to react to, is the

23    growing number of talc plaintiffs, the efforts of people like

24    Mark Lanier, and we have his affidavit in the record, that

25    talks about the need to get publicity out there to generate a

Page 11

1     large volume of cases in order to put, make the cost of

2     defending the litigation significant.

3               And of course, every once in a while, you might get a

4     huge verdict like the Ingham verdict, even though we win and

5     win and win trial after trial and appeal after appeal, we

6     demonstrate that, in fact, we're not liable for this.  Every

7     now and then something might happen.  All of that is --

8               JUDGE SHWARTZ:  That might --

9               MR. HOCHMAN:  -- pressures and risks known fully to

10    the market.

11              JUDGE SHWARTZ:  You're not making an argument there is

12    truth in the market, correct?

13              MR. HOCHMAN:  Correct.

14              JUDGE SHWARTZ:  Because there's been constant denials

15    of the representations, correct?

16              MR. HOCHMAN:  Correct.  We're not saying --

17              JUDGE SHWARTZ:  Okay.

18              MR. HOCHMAN:  We're not making a truth in the

19    argument, nor are we making a loss causation argument, right?

20    And the law permits us to do that anyway, right?  That's

21    Goldman and it's straightforward, right?  This is the rigorous

22    analysis that must be required at class certification.

23              JUDGE CHUNG:  So I do want to -- oh, I'm sorry.

24              JUDGE SHWARTZ:  Go ahead, go ahead.

25              JUDGE RESTREPO:  Go ahead.

Page 12

```
 1          JUDGE SHWARTZ:  Go ahead.

 2          JUDGE CHUNG:  So I do want to ask you about the

 3    newness.  And I just want to understand what has to be new.  So

 4    does it have to be the correction itself as correcting the

 5    original misrepresentation, or does a new basis for the same

 6    correction count?  So for instance, if the misrepresentation is

 7    I say there's never been toxic waste dumped on my property.

 8          MR. HOCHMAN:  Um-hum.

 9          JUDGE CHUNG:  And so that's the misrepresentation.

10    And something comes out that shows when I bought it, I received

11    a report that in fact, there used to be -- I assume you would

12    say that's a correction.

13          MR. HOCHMAN:  Certainly.

14          JUDGE RESTREPO:  Can I add, on the same line of

15    questioning?

16          MR. HOCHMAN:  Yeah.

17          JUDGE RESTREPO:  What's your best authority that the

18    information has to be new?

19          MR. HOCHMAN:  Yeah.

20          Were you finished, Judge Chung?

21          JUDGE CHUNG:  Oh, yeah.  Well, then I -- then there's

22    a second disclosure that says also, two years later, Judge

23    Chung tested soil at the property, and there was positive

24    results for toxic substances.

25          MR. HOCHMAN:  Yeah.
```

1          JUDGE CHUNG:  Is that -- it's the same correction, so

2     to speak --

3          MR. HOCHMAN:  Um-hum.

4          JUDGE CHUNG:  -- in that it shows that I knew there

5     was toxic material on my property, but it's a different basis.

6          MR. HOCHMAN:  Yeah.

7          JUDGE CHUNG:  So is that two corrections or is that

8     one correction?

9          MR. HOCHMAN:  Yes.  You can have multiple corrections

10    sort of flowing out.  You can have partial corrections.

11         JUDGE CHUNG:  Sure.

12         MR. HOCHMAN:  We recognize there's plenty of case law

13    about that, so --

14         JUDGE CHUNG:  But I mean, what is the new -- is the

15    new part what is actually corrected, which is simply I know

16    there's toxic, or does each basis count as a new?

17         MR. HOCHMAN:  The facts -- what has to be new, and

18    this is both -- by the way, new and corrective.

19         JUDGE CHUNG:  Right.

20         MR. HOCHMAN:  Like it's not enough just to say some

21    new thing that isn't corrective that is a mismatch with the

22    false statement.  It must be new and corrective.

23         In your examples, Judge Chung, both facts, the report

24    and additional investigation, those are new facts.  And the

25    important thing is facts are different from opinion.  And the

```
 1   cases on that are legion.  Meyer (ph.), Omnicom, even Amedisys,
 2   one of their favorite cases.  Facts are what matter.  So there
 3   has to be some new fact that comes out that is corrective.
 4   That's what the market incorporates through the efficient
 5   market hypothesis.
 6           Now, as for Judge Restrepo's --
 7           JUDGE SHWARTZ:  Which leads to Judge Restrepo.  What's
 8   the law -- where's the authority --
 9           MR. HOCHMAN:  So --
10           JUDGE SHWARTZ:  -- that it has to be new?
11           MR. HOCHMAN:  So my -- well, two things.  First of
12   all, there's the entire logic of the entire market hypothesis
13   sort of treats that.  Both experts in this case agree with
14   that.
15           But I'd point first to Omnicom because I think that
16   might be as good an example as you can get.  I think also, the
17   Einhorn analysis in Meyer is also a similar kind of case, which
18   demonstrates that these are -- this is the way the efficient
19   market hypothesis works.
20           In Omnicom, you had a transaction, the Seneca
21   transaction, and there had been fully disclosed errors,
22   accounting errors, in that transaction, right?  Sometime later,
23   accountants come out with a report about the company and the
24   stock drops after the accounting report.  And what the Second
25   Circuit says in Omnicom is that's price reaction.  It can't be
```

1  price impact from the alleged false statement.  It doesn't --

2  the alleged false statement being repeated again, the facts

3  underlying the Seneca transaction have already been priced into

4  the market by the --

5          JUDGE CHUNG:  Because it's inefficient otherwise.

6          MR. HOCHMAN:  -- because of the efficient market

7  hypothesis.  And the importance of the efficient market

8  hypothesis cannot be understated here.  It is the logic that

9  runs through a variety of different elements in the --

10         JUDGE SHWARTZ:  It's also not disputed in this case.

11         MR. HOCHMAN:  And it's not disputed in this case,

12  right?  And so you have to take the good with the bad, right?

13  So they have -- so they have all sorts of facts where they rely

14  on small sources, like the Bernstein law firm or like another

15  law firm's report or other people.  The Facts About Talc

16  website, they say, can move the market because it has false

17  statements.

18         But then when it comes time for them to pay the price

19  of how the efficient market hypothesis absorbs things, they

20  say, oh, no, no, it doesn't have to be really new.  Maybe

21  people were evaluating it differently, but opinions and

22  reporters' opinions, like the Reuters opinion, that doesn't

23  count.  And that's straight under the cases that I've already

24  cited.

25         JUDGE SHWARTZ:  Goldman says -- you mentioned Goldman

Page 16

1   and Goldman says we're supposed to consider all evidence.

2        MR. HOCHMAN:  Yep.

3        JUDGE SHWARTZ:  And the evidence we're supposed to

4   consider for the purposes of the rebuttal is the Defendant has

5   the burden of persuasion to put forth evidence to demonstrate

6   there's a severance of the link between the misrepresentation

7   and the price Plaintiffs paid.

8        MR. HOCHMAN:  Yeah.

9        JUDGE SHWARTZ:  What is your affirmative evidence in

10  this case?  Do you have something more than saying their

11  corrective disclosure should not count?

12       MR. HOCHMAN:  No, that is -- but that's enough.

13  That's, in fact, exactly how it is.

14       JUDGE SHWARTZ:  What is your authority to say

15  discounting the Plaintiff's evidence is equal to carrying your

16  burden of proof?

17       MR. HOCHMAN:  Because our burden -- because the

18  corrective -- the way the presumption -- and I see I'm into my

19  rebuttal time, and --

20       JUDGE SHWARTZ:  Yeah.  And I'm going to have my

21  colleagues --

22       MR. HOCHMAN:  So I -- and I beg your indulgence --

23       JUDGE SHWARTZ:  And you didn't reserve your time, but

24  as I understand, you wanted --

25       MR. HOCHMAN:  I apologize.

Page 17

1           JUDGE SHWARTZ:  Just one second, Counsel.

2           MR. HOCHMAN:  I have three minutes.

3           JUDGE SHWARTZ:  You want three minutes?

4           MR. HOCHMAN:  Yeah.

5           JUDGE SHWARTZ:  We'll give you three minutes, but

6    we're going to use this period to let us ask you our questions,

7    and then we'll have you sit down.

8           MR. HOCHMAN:  Of course.  So the way the efficient

9    market hypothesis works is they get the presumption of

10   reliance, which is class wide.  Everyone.  Because the market

11   takes in the information and the competitive nature, and this

12   is discussed pretty thoroughly in 3689 to -90 in our expert.

13   It's also discussed in Basic, right?

14          The market takes in the information and there are

15   trading opportunities.  And it's that competition for trading

16   opportunities that means that it doesn't really matter how many

17   people know this fact.  It just means that it gets reflected

18   into the price.  And that's why it's uniform across the board,

19   right?

20          So why does it have to be new and corrective?  Because

21   in a case like this, a what we call an inflation price

22   maintenance case, the way reliance works is kind of mechanical.

23   And both Goldman and Halliburton 2 talk about this.  It's kind

24   of three steps, right?  One, the prior false statement props up

25   the price.  Two, then new public information reveals that the

Page 18

1   prior false statement -- the prior statement was false.  And

2   then three, the stock price quickly declines.

3           And you need all three of those steps.  Otherwise, you

4   can't infer back.  That's what the inflation price maintenance

5   does.  It infers back to the original false statement that the

6   drop reflects the propping up of the market.  That's reliance,

7   right?  So then --

8           JUDGE SHWARTZ:  And your position is the only way the

9   Plaintiffs can carry their burden of proof is based on that

10  sequence?  There's no other way that they can prove it?

11          MR. HOCHMAN:  Correct.

12          JUDGE SHWARTZ:  That's it?

13          MR. HOCHMAN:  Well, the way they've pled this case,

14  yes.  In fact, that's -- and remember, they choose the

15  corrective disclosures.  They're the ones who get to decide.

16  They're the ones who decided to make this an inflation price

17  maintenance case.  These are their choices.  And when you make

18  these choices, you lock yourself into being sure that your

19  corrective disclosures are new, and corrective, and have the

20  kind of match to the prior false statement and work through the

21  efficient market hypothesis the way the law requires.  And if

22  you don't --

23          JUDGE RESTREPO:  What if the new -- what if these

24  disclosures are not intelligible or opaque to the average

25  participant in the market?  Is that a requirement?

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

1          MR. HOCHMAN:  So first of all, no.  I don't think the

2     average participant in the market plays any role.  This is not

3     like other cases where there might be -- where you have a kind

4     of reasonable investor standard for say, statute of limitations

5     purposes.  The market doesn't work that way.

6          But there is room for judgment here in some cases,

7     right?  And I think Merck talks about this actually, when Merck

8     talks about the math that was done.  The case of Merck sort of

9     holds back, I think rightly so, and says we don't know if

10    there's ever a case where it might be too hard for the market

11    to have been able to incorporate it.

12         And the way the theory works, and again, Kleidon

13    explains this, the way the theory works, the marginal cost of

14    acquiring the new information has to be roughly zero for

15    investors.  And in a world like this, where there's no dispute

16    about this, right, tons of people are watching this stuff.

17    Everybody -- there are market analysts all over the place

18    devoted to this stuff.  The dollar impacts on investments are

19    enormous.  There's no question.  And nobody doubts the

20    information out there is available and being picked up.  Sorry.

21         JUDGE CHUNG:  But to Judge Restrepo's point, I think,

22    if you read Basic and the steps of Basic, the first is that the

23    alleged misrepresentation is publicly known.  And if you think

24    of sort of the anti-Basic test, it would be that the alleged

25    corrective disclosure is publicly known.  And I'm just not

Page 20

1    sure -- you know, the asbestos and talc website and the Facts

2    About Talc website, I don't think it's a mischaracterization

3    when the appellees say they're document dumps.

4            I mean, I went to the Wayback Machine site that you

5    listed, the archive, and there's not even any interface.  It's

6    just a set of links that you have to know which one to click.

7    Then you -- first you have to click, like, the declassified or

8    whatever.  Then you have to click J&J, and then all of the --

9    there's thousands of documents with obscure names like

10   JN8432-dash --

11           MR. HOCHMAN:  Um-hum.

12           JUDGE CHUNG:  You know, I don't see that that is --

13   that might be publicly available, but that's not what Basic

14   says.  Basic says publicly known.  And if this is just the

15   inverse, that is, the market reacting to information, it should

16   be publicly known.  The same can be said about the Facts About

17   Talc website.

18           MR. HOCHMAN:  Two responses on that.  First of all, if

19   you go to 1087 and 1088, where we have one of the charts

20   listed, you'll see that there's no fact at issue in connection

21   with the Reuters article or at issue in any aspect of this case

22   that depends exclusively on --

23           JUDGE CHUNG:  Sure.

24           MR. HOCHMAN:  -- disclosure on that website.  So

25   that's kind of neither here nor there.

Page 21

1          Second, with respect to websites like that, they

2      themselves allege that statements that we make in those

3      websites, in Facts About Talc can move the market.  They can be

4      something they rely on, that purchasers rely on, for false

5      statements.  You take the good with the bad.  If it's going to

6      do one, it has to do the other.

7          And third, and this is what's really important, I

8      understand the phrase "publicly available" as a kind of -- it

9      has a kind of intuitive sense that, like, everyone can find it.

10     It would be would be easy to find.  That's not the point.

11     That's actually not the point.  The point is, how much effort

12     would the marketplace, the people whose job it is -- and this

13     is what Merck tells us.  We assume that people whose job it is

14     to follow the marketplace are doing their jobs.  And if it

15     doesn't take anything to monitor these websites, to monitor the

16     trials, if that's the job that you have, we assume you do your

17     job, right?

18         And so it doesn't matter that maybe not everybody

19     knows this.  The people who are making, seeking trading

20     opportunities and bringing this information into the market are

21     actively doing their jobs.  And that's what Merck requires.

22     That's what the efficient market hypothesis requires.  And

23     that's what ultimately means that all of the information at

24     issue in this case --

25         JUDGE CHUNG:  How much effort is required to watch

Page 22

1   eight hours of a trial every day?

2       MR. HOCHMAN:  It's marginal cost, Your Honor.  That's

3   the thing, right?  You've got people out there whose job it is

4   to monitor J&J stock, to monitor its liabilities, to monitor

5   the cost it takes J&J to defend these cases, to monitor the

6   number of cases that are out there.  So the marginal cost of

7   doing that job is zero and that's why it all counts.

8       JUDGE SHWARTZ:  I have one more question, and then

9   we're going to call on your adversary to talk.  I'm going to

10  ask you the same -- is the only evidence that you are relying

11  upon on behalf of J&J to rebut the Basic presumption the

12  discounting of the corrective disclosures?  Is that the

13  evidence that you're relying on?

14      MR. HOCHMAN:  So what we are doing -- yes.  So first

15  of all, yes.  And secondly, what we are doing is we are

16  rebutting the presumption of reliance that depends on the price

17  impact analysis of corrective -- of the asserted corrective

18  disclosures of the Plaintiff.

19      JUDGE SHWARTZ:  But that's a theory.  I want to know

20  what the evidence is.

21      MR. HOCHMAN:  The evidence --

22      JUDGE SHWARTZ:  Is the evidence that the corrective

23  disclosures are not worthy of credence?

24      MR. HOCHMAN:  Correct.  All of the evidence that we

25  have that that no fact in any of their corrective disclosure is

Page 23

1    both new and both corrective.  Once you demonstrate that, the

2    link, the rationale of their presumption, that the corrective

3    disclosures demonstrate class-wide reliance on the propped up,

4    inflated price, evaporates.

5             JUDGE SHWARTZ:  So your position is, it doesn't

6    require you to produce affirmatively evidence, but rather it is

7    sufficient, from your point of view under Goldman, to discount

8    the value of the evidence they rely on?

9             MR. HOCHMAN:  Well, I mean, we did produce evidence.

10   We've produced a ton of evidence.  They --

11            JUDGE SHWARTZ:  All to discount newness.  I'm just

12   asking --

13            MR. HOCHMAN:  Sure.

14            JUDGE SHWARTZ:  --  do you need any -- that's really

15   what your focus is --

16            MR. HOCHMAN:  Yes, that is right.

17            JUDGE SHWARTZ:  -- that we understand what your

18   argument for the record is.

19            MR. HOCHMAN:  We are allowed to attack that theory in

20   that way, but to be clear, it's our burden.

21            JUDGE SHWARTZ:  Um-hum.

22            MR. HOCHMAN:  We carry the burden.

23            JUDGE SHWARTZ:  Um-hum.

24            MR. HOCHMAN:  We have to prove that what they say are

25   corrective disclosures can't count as corrective disclosures

Page 24

1    that satisfy the presumption of reliance.

2         JUDGE CHUNG:  And so going back to my question.  So if

3    a fact is new, but the correction is the same, does that count

4    as a new correction?

5         MR. HOCHMAN:  A fact of -- any time a fact is new and

6    it matches, it's corrective.  It can be a new -- it can be a

7    corrective disclosure.  It might or might not have price

8    impact, but at least it's eligible.  And they don't have

9    anything that's eligible.

10        JUDGE SHWARTZ:  If I could just make sure you guys are

11   talking the same language.  You're using the word correct.  And

12   you used the word -- Judge Chung used the word "corrective",

13   you use the word "match".  What you're talking about is related

14   to, connected with the alleged --

15        MR. HOCHMAN:  Correct.

16        JUDGE SHWARTZ:  -- misrepresentation at the time of

17   Plaintiff's purchase.

18        MR. HOCHMAN:  Right, which is what Goldman is.

19        JUDGE SHWARTZ:  So it has to be within the same

20   subject area, right?

21        MR. HOCHMAN:  Which is exactly what Goldman talks

22   about, yes.

23        JUDGE SHWARTZ:  Okay.  And I think what Judge Chung is

24   talking about is a fact that comes out at a --

25        MR. HOCHMAN:  Yep.  Um-hum.

Page 25

1          JUDGE SHWARTZ:  -- later time, from your point of

2     view, as long as that fact is a new fact, but it's within the

3     same subject matter of the misrepresentation --

4          JUDGE CHUNG:  So if it's the same correction.  In

5     other words --

6          MR. HOCHMAN:  Correct.

7          JUDGE CHUNG:  -- I knew of toxic material.  It's the

8     same correction both times, but since it's a new fact, it

9     counts as a new --

10          MR. HOCHMAN:  It can be a --

11          JUDGE CHUNG:  -- corrective disclosure for purposes of

12     Basic.

13          MR. HOCHMAN:  For purposes of price --

14          JUDGE CHUNG:  Of rebutting Basic.

15          MR. HOCHMAN:  -- impact and Basic, yes.

16          JUDGE CHUNG:  For purposes of rebutting Basic.

17          MR. HOCHMAN:  That's right.  So that -- and remember,

18     this isn't going to happen very often.  I mean, the work -- I

19     understand, Judge Shwartz, you say we didn't put forth new

20     evidence to rebut the presumption.  We put forth a ton of

21     evidence.  It's built off their theory of the case, that we're

22     not talking about threatening securities law, class actions at

23     all.  The burden we took here was substantial, and we met it.

24          And then Mark Lanier comes in toward the end of the

25     case and says, yeah, of course it was all public.  It has to

Page 26

1   have been all public.  And in fact, I benefit from the reaction

2   to that public information.

3           JUDGE SHWARTZ:  Counsel, we'll have you back on

4   rebuttal.

5           MR. HOCHMAN:  Thank you.

6           JUDGE SHWARTZ:  Okay.

7           MR. HOCHMAN:  Appreciate it.

8           JUDGE SHWARTZ:  You're welcome.

9           MR. DALEY:  May it please the Court, Joseph Daley, for

10  the lead Plaintiff appellee, San Diego County Employees

11  Retirement Association.

12          There's a singular issue facing this Court today, and

13  that's whether the District Court, given its broad discretion

14  and considering all available evidence under Goldman Sachs,

15  correctly held that the Defendants failed to disprove price

16  impact by a preponderance of the evidence.

17          J&J concentrates on the Reuters report, so will I.  I

18  want to jump right into it.

19          The Defendant's argument ignores the facts embedded in

20  the Reuters report, establishing that it did convey new

21  information to the market.  Now, they focus on 56 specific

22  documents that the Reuters report linked to, but the article

23  itself noted that its reporting actually involved thousands of

24  pages of J&J documents, memos, internal reports, deposition

25  testimony.  And while many had been shielded from the public

Page 27

1    view or not covered in the media, much of their contents is

2    reported here for the first time.

3            Thus, Reuters accomplished what a brief mention in a

4    prior trial or a document, as Judge Chung pointed out, dumped

5    among thousands of PDFs, untitled, unsearchable in a document

6    dump --

7            JUDGE SHWARTZ:  What if --

8            MR. DALEY:  -- could not have done.

9            JUDGE SHWARTZ:  What if we concluded that the Reuters

10   article had new, corrective information?  Do we have to --

11           MR. DALEY:  Had.

12           JUDGE SHWARTZ:  -- go back in time for the entire

13   class period to evaluate whether or not the District Court

14   clearly erred with respect to its conclusions concerning the

15   prior -- the other, the September, the February, July, et

16   cetera disclosures.

17           MR. DALEY:  I --

18           JUDGE SHWARTZ:  Do we have to do that analysis?

19           MR. DALEY:  Well, certainly, you need to make sure

20   that the District Court brought sufficient rigor to the entire

21   discussion, but let's not -- and I want to bring in here the

22   fact that it's the Defendant's burden to disprove price impact,

23   and the price impact in this case is most dramatically shown by

24   what happened after the Reuters report.

25           JUDGE SHWARTZ:  I'm with you.  I understand your --

1          MR. DALEY:  Yes.

2          JUDGE SHWARTZ:  -- position on that.  My question is

3    really focused on our obligation.

4          If we were to agree with you that the Reuters article

5    contained corrective new information, and it demonstrated some

6    statistically significant impact --

7          MR. DALEY:  Yes.

8          JUDGE SHWARTZ:  -- reaction in the market thereafter,

9    that from which we can infer there was a material

10   misrepresentation that inflated the price.  I'll assume all

11   that for the question.

12         MR. DALEY:  Yes.

13         JUDGE SHWARTZ:  Does the Court -- does the Third

14   Circuit need to then go and look at each one of the other

15   disclosures that your client has put forth --

16         MR. DALEY:  I --

17         JUDGE SHWARTZ:  -- as corrective, or could we conclude

18   if Reuters is new, it's new for the whole class period.  We're

19   done.

20         MR. DALEY:  Well, in a perfect world, of course I'd

21   say yes, but no.  No, Your Honor.  The --

22         JUDGE SHWARTZ:  That's what I want to know --

23         MR. DALEY:  Yes.  I --

24         JUDGE SHWARTZ:  -- is do we have to do that, and if

25   so, why?

Page 29

1          MR. DALEY:  You would go back to see whether or not

2     the District Court abused its discretion in looking at those

3     earlier because the District Court went through this entire

4     process.  The Defendants pointed to all these prior disclosures

5     at the Ingham trial and the Lanzo trial.

6          JUDGE SHWARTZ:  Yeah, the Plaintiffs actually put

7     forth the corrective disclosures for the Court to consider,

8     yes?

9          MR. DALEY:  Well, and it's all as part of the record,

10    but in the District Court, as well as it should have done, said

11    I'm going to consider everything.  I'm not just going to look

12    at Reuters.  I'm going back to look at these public statements

13    made during these trials.  And do you know what?  Looking at

14    them, I see that maybe it's within -- I don't think he used the

15    word penumbra, but I see it's within some sort of overlap.  But

16    nonetheless, I find, under my discretion, that the Reuters

17    report itself had enough new corrective information for the

18    first time coming to the market, so that price impact was

19    demonstrated --

20         JUDGE SHWARTZ:  I totally understand that.  All I'm

21    asking is, why is it that the Court needed to go through the

22    analysis for each one of the disclosures, and could not have

23    just rested on Reuters for the entire class period?

24         MR. DALEY:  I --

25         JUDGE SHWARTZ:  Is it got to do with the way the

Page 30

1   Plaintiffs presented the case, and therefore, the District
2   Court needed to evaluate it for some other -- like, for some
3   later purpose?  Like, the Plaintiffs needed, if they were to
4   prevail, for damages?
5           I'm just trying to get a sense of --
6           MR. DALEY:  No, no.  No.
7           JUDGE SHWARTZ:  -- litigation reasons for why we --
8   why these corrective disclosures, other than the Reuters one --
9           MR. DALEY:  Understood.
10          JUDGE SHWARTZ:  -- needed to be evaluated.
11          MR. DALEY:  No.
12          JUDGE SHWARTZ:  That's what I'm trying to find out.
13          MR. DALEY:  And I don't mean to sound flippant.  I
14   just --
15          JUDGE SHWARTZ:  And I don't mean to sound stupid, so.
16          MR. DALEY:  No, and please.  Never -- that wasn't
17   implied at all.  The District --
18          JUDGE SHWARTZ:  I didn't think you were implying it.
19          MR. DALEY:  Okay.  No, the District Court had already
20   taken care of things such as loss causation and materiality
21   previously at the motion to dismiss stage.
22          JUDGE SHWARTZ:  I'm aware of that.
23          MR. DALEY:  So did the --
24          JUDGE SHWARTZ:  I'm asking why did they have to do it
25   for this class certification and ruling?

Page 31

1          MR. DALEY:  Because the Court was doing its duty under

2     Goldman Sachs to look at all evidence, qualitative as well as

3     quantitative, and looking at those earlier alleged partial

4     disclosures was part of that process.

5          Now, the Defendants here, as I said --

6          JUDGE SHWARTZ:  So --

7          MR. DALEY:  -- insist that Reuters had nothing new,

8     and that's not true.  We know it's not true.  Their own expert

9     conceded two valuable points.  Their expert, Dr. Kleidon,

10    conceded that when Mount Sinai -- when Reuters reported that

11    Mount Sinai researcher, Dr. Arthur Langer, told Johnson &

12    Johnson in 1971 that he had found asbestos, that in 19- --

13    2017, with those personal injury trials that we're talking

14    about underway, J&J lawyers went back to Dr. Langer and spoke

15    with him and he said, quote, "I stand by all of my findings",

16    end quote.  Reuters also noted that J&J, unsurprisingly, did

17    not call Dr. Langer to testify in any of those trials.

18         A second point that Dr. Kleidon, their expert,

19    concedes is brand new.  For decades, Johnson & Johnson had used

20    X-ray scanning as its primary method of asbestos testing.  But

21    there was a better concentration method of prepping the powder

22    for electron microscope testing.  They were told that.  It was

23    recommended as optimal by a respected outside university

24    research lab, and they ignored it.

25         Two more quick facts that are brand new in the Reuters

Page 32

1  report that perhaps Dr. Kleidon didn't concede, but

2  nonetheless, I'll explain why they're new.

3          JUDGE CHUNG:  But in doing that, if you could -- it

4  goes to the question I asked your colleague, which is -- I

5  guess what I'm getting at is the Goldman statement that if the

6  corrective -- alleged corrective disclosure is not a match as

7  far as generality and specificity --

8          MR. DALEY:  Sure.

9          JUDGE CHUNG:  -- it's less likely that the specific

10 disclosure actually corrected the generic misrepresentation.

11         MR. DALEY:  Of course.  Completely agree with that.

12         JUDGE CHUNG:  And these misrepresentations seem very

13 generic to me.  Asbestos free and talc is basically not

14 carcinogenic, which one could read into that does not contain

15 asbestos.

16         MR. DALEY:  Yes.

17         JUDGE CHUNG:  And all of the new things seem to be

18 extremely specific and all to the same point, which is not only

19 did it have asbestos, which I think was a well-established

20 controversy prior to any of these alleged corrections, that the

21 litigating position of J&J was that there was no asbestos,

22 whereas others said there was.  But certainly, the knowledge

23 and the revelation that in the 70s, even the 50s, 60s, that

24 this was a concern, that's new and that definitely matters for

25 negligence in these types of suits.

Page 33

1       But once it's known that, hey, in the 70s, they've got

2    the testing, they tried to hide certain methods.  I know here

3    you say, well, the Reuters talks about concentration, but an

4    October 2017 article basically refers to that same source and

5    says they neglected to use this more accurate test.  That's the

6    same level of generality, from what I'm seeing.

7       So I'm just -- to Goldman's point, how, if these are

8    all the same correction over and over, at the same level of

9    generality, but with just different specifics, I'm just not

10   sure, under the case law, does that count as new if it's just

11   the same correction to the same misrepresentation?

12       MR. DALEY:  Thank you, Judge Chung.  And I would

13   respectfully disagree with you with your characterization of

14   the earlier misstatements as being somewhat generic, as in

15   Goldman.

16       Let me read you just a few because they are

17   quantifiable.

18       JUDGE CHUNG:  Oh, I've got the chart.  You don't have

19   to read them to me.

20       MR. DALEY:  All right.  Well, when the Defendants say

21   into the market, our talc products are and always have been

22   free of asbestos, that is a specific --

23       JUDGE CHUNG:  That's what I'm referring to.

24       MR. DALEY:  That is a specific misrepresentation.

25   That misrepresentation is 180 degrees away from what J&J

Page 34

1   internally said in the 2013 markup of the Safety and Care

2   Commitment page, where they said, we cannot say always asbestos

3   free.  We cannot claim 100 years of safe use.

4           JUDGE CHUNG:  Sure, but once that correction is made,

5   if it's the same correction over and over --

6           MR. DALEY:  But in --

7           JUDGE CHUNG:  -- but based on different sources --

8           MR. DALEY:  But it's --

9           JUDGE CHUNG:  -- I guess, why does it -- why does it

10  count as a new correction?

11          MR. DALEY:  Because it's not necessarily being

12  corrected with the same force with which it was made.  Let's

13  not forget that throughout the class period, the Defendants are

14  repeatedly and vehemently denying what is being said by persons

15  such as Attorney Mark Lanier at trial.

16          They're going out -- not only are their own attorneys,

17  of course, disputing the evidence during trial, they're hitting

18  MSNBC and Bloomberg in the evening after those trials, and

19  coming and giving information to friendly analysts who repeat

20  that analyst -- pardon me -- those denials to the market saying

21  that our asbestos remains -- I'm sorry -- our talc remains

22  asbestos free.  We've got decades of safe testing.

23          We know they didn't have decades of safe testing.

24  They had decades in which tests showed that there was asbestos

25  in their talc, and they deliberately hid those revelations

1    from, for example, the FDA.

2        JUDGE SHWARTZ:  So to follow up on Judge Chung's

3    point, so you just described a sequence of information that

4    suggests that the talc is contaminated.  Denial.  Information

5    talc is contaminated.  Denial.

6        MR. DALEY:  Right.

7        JUDGE SHWARTZ:  Is it your position that for every

8    time there was a denial and then a retort, that retort became,

9    quote, "new corrective information"?

10       MR. DALEY:  Sure.  And this Court in --

11       JUDGE SHWARTZ:  Even though it was -- even if it was,

12   as Judge Chung was saying, it was the same data?  The same

13   information?

14       MR. DALEY:  I understand that, but let's -- in a --

15       JUDGE SHWARTZ:  Is it the denial that's doing the

16   work?  I guess is my point.

17       MR. DALEY:  It is the denial that's doing the work for

18   them.  A well-respected American company, over 100 years in

19   business.  Not only that, analysts whose job it is to dig in

20   and -- dig in and get the truth about a company's finances or

21   its progress, these analysts are repeating to the market, look,

22   what you're hearing in these trials, it's greedy Plaintiffs'

23   lawyers versus J&J.  J&J has won every one of these trials or

24   gotten guilty verdicts overturned on appeal, until the Ingham

25   trial.

1        So that is all corrective -- pardon me.  That is all

2    information going into the market that is muting, all right,

3    muting of the false statements that J&J likes to say is coming

4    out into the market and is acting as a corrective, a pre-

5    Reuters corrective disclosure, making Reuters all stale news.

6    That's just not the case.

7        JUDGE RESTREPO:  So I need you to define "new" for me

8    because there's a lot of back and forth in the briefs about

9    whether or not this information --

10       MR. DALEY:  Sure.

11       JUDGE RESTREPO:  -- has to be new.  First question,

12   does it have to be new?

13       MR. DALEY:  We don't think it has to be.  I'm sorry.

14   We don't think the Court has to go there.  We actually -- we,

15   we--that that argument, to us, sounded very much like a loss

16   causation argument dressed up as price impact.

17       There's nothing in the Goldman Sachs case, for

18   example, which is the latest price impact statement from the

19   Supreme Court, that talks about the corrective information

20   having to be brand new.

21       And even if information has to be new, okay, just

22   indulging their point, even if the information, the corrective

23   information, has to be new, that is what Reuters did.  Was it

24   brand spanking new?  Was every piece of --

25       JUDGE RESTREPO:  Well, they repackaged it.  They

Page 37

1    repackaged it.  And they made it maybe more accessible to --

2         MR. DALEY:  A little bit more than repackaging.  All

3    right?  It was a studied gathering of all this data,

4    statements, denials, unpublished studies, things like the Carol

5    Goodrich redlining of that infamous J&J website, where they

6    said, we can't always say this.

7         And I mean -- this is an example -- here's an example

8    of new and really new, okay?  They say that wasn't new because

9    that already had appeared in the Ingham trial.  Well, that the

10   first page of that markup had been waved around during cross-

11   examination.  There were three more pages to that particular

12   document that Reuters linked to.

13        When you go to the second page of that document, you

14   will find other J&J executives saying, you know what?  We're

15   going to leave a study out of this webpage because it could

16   actually tell the market that there's a causal connection

17   between our powder and ovarian cancer.

18        And Reuters also linked to the page, including the

19   metadata, which showed that Carol Goodrich, the --

20        JUDGE CHUNG:  I think Judge Restrepo's question is

21   more legal, which I'm also interested, which is --

22        MR. DALEY:  Okay.

23        JUDGE CHUNG:  -- just what is new, though?  You're

24   giving examples of sort of like a spectrum of newness.  When

25   does the spectrum end and it's old?  What is new?

1          MR. DALEY:  The Amedisys case out of the Fifth

2     Circuit, I think is a good example, and Genius Brands, where

3     information that's not --

4          JUDGE CHUNG:  But that's a loss causation at the

5     motion to dismiss stage.

6          MR. DALEY:  Sure, but the overall context of whether

7     something is truly new in terms of for presentation to the

8     market, for coming into the market, I think that's fairly

9     presented by those cases.

10          JUDGE RESTREPO:  I understood you to argue that it

11     doesn't have to be new.

12          MR. DALEY:  And that is our point.  All we're saying

13     is, if this Court were inclined to agree with the Defendants

14     that it has to be pristine, new information that never saw the

15     light of day, either in a trial or even dumped in a document

16     dump on some obscure website, nonetheless, we have also shown

17     that we've already met that.

18          And I'd like to add, I heard earlier, and I can't

19     remember whether it was Judge Shwartz or Judge Chung, said to

20     my opponent something about the Defendants carrying the burden

21     of proof at the end of the class period.  It's not our burden.

22     We've already done what we had to do.  We've got the Basic

23     presumption, which they concede we've gotten by showing that

24     the material was public and that our clients purchased.

25          The burden then shifted to them, and I believe it may

Page 39

1  have been Judge Shwartz asked, what's your affirmative

2  evidence?  They have none.  There's no citation to a page in

3  the appendix where they come forward and say, XYZ shows that we

4  have disproved price impact.  In fact, quite the contrary.

5  Their own expert, Dr. Kleidon, he admits that he did not look

6  at the price impact of the statements that he conceded in the

7  Reuters report were new.

8          JUDGE SHWARTZ:  But isn't their position that they

9  carried their burden by demonstrating that the evidence adduced

10  to support the ability to rely on the market lacks foundation?

11          MR. DALEY:  No, Judge.

12          JUDGE SHWARTZ:  That's what they're suggesting, and

13  that they don't --

14          MR. DALEY:  All they've done --

15          JUDGE SHWARTZ:  -- to do anything more affirmatively

16  other than kind of deteriorate your evidence.

17          MR. DALEY:  Understood.  All they've done -- and I

18  apologize for not knowing whether it was Halliburton 1 or

19  Halliburton 2, all they've done is come forward with some,

20  casting some -- and I'm paraphrasing, casting some aspersions.

21  They've made some showing, but they haven't carried their

22  burden of proving, of severing that link between their

23  misconduct and then the obvious price impact that happens at

24  the end of the class period.

25          So given all of that, and given the record here, we

1    think that the District Court was well within its broad

2    discretion in holding that they had not proven price impact

3    beyond, by a preponderance of the evidence.  And we ask this

4    Court to rule in our favor.

5            JUDGE CHUNG:  Okay --

6            JUDGE SHWARTZ:  Don't go anywhere, because my

7    colleague has a --

8            MR. DALEY:  Oh, I'm --

9            JUDGE CHUNG:  Yeah.  I just have one question for --

10            MR. DALEY:  -- happy to stay -- happy to stay up here.

11            JUDGE CHUNG:  Yeah.  Sorry.  I appreciate you wanting

12    to adhere to the time.  I did just have one --

13            MR. DALEY:  Sure.

14            JUDGE CHUNG:  I think this one is easy.  It's just,

15    after the motion to dismiss, Judge Wolfson left in two

16    categories of misrepresentations.  We've talked mostly about

17    one category today, which is talc is noncarcinogenic and it

18    doesn't -- the talc products don't --

19            MR. DALEY:  Um-hum.

20            JUDGE CHUNG:  -- contain asbestos.

21            There is another category that was corrective actions,

22    R&D, and quality assurance, but it doesn't seem anyone thinks

23    that those -- even though they survived the motion to dismiss,

24    it doesn't seem anyone is arguing that these corrections

25    correct those misrepresentations.

Page 41

1          MR. DALEY:  You know, I've written down here, as my

2    opponent was speaking, I wrote down the three main areas

3    because there was some talk up here about risk.  And this is

4    not a case about risk.  This is a case about specific

5    statements about three categories:  The safety of J&J powder

6    and talc, the decades of testing -- of successful testing --

7          JUDGE CHUNG:  Um-hum.

8          MR. DALEY:  -- that J&J and outside researchers

9    supposedly did, and last but not least, the fact that there is,

10   quote, "no asbestos in our products".  So I think what

11   you're --

12         JUDGE CHUNG:  The R&D and all of that is --

13         MR. DALEY:  I think that falls underneath number two,

14   the decades of testing, which we know is a false statement.

15         JUDGE CHUNG:  Well, but if you look at your complaint,

16   all of those R&D statements are forward looking.  They're about

17   the new safety initiative.  So those forward looking --

18         MR. DALEY:  And that brings up questions of scienter,

19   and a forward-looking statement, and whether or not those

20   statements were protected under the --

21         JUDGE CHUNG:  Well, the question I'm asking is do the

22   corrections about past historical testing practices correct

23   misrepresentations about J&J's policy moving forward from 2013

24   on?  It wouldn't seem to.

25         MR. DALEY:  Well, we know for a fact that actually,

                                                        Page 42

1   J&J had problems with asbestos in its products all the way

2   through the class period.  The FDA, in 2019, found asbestos --

3            JUDGE CHUNG:  But focusing on the corrective

4   disclosures, is there anything in the corrective disclosures

5   that talk about forward looking J&J R&D or corrective actions

6   from 2013?

7            MR. DALEY:  Not that I'm aware of, Judge.

8            JUDGE CHUNG:  Okay.

9            JUDGE SHWARTZ:  You talked about in response to Judge

10  Restrepo, the information doesn't need to be new.  The

11  corrective disclosure information doesn't need to be new.

12           MR. DALEY:  Right.

13           JUDGE SHWARTZ:  What evidence can then be used to

14  prove price impact, meaning that the price of the stock when

15  the plaintiffs bought it was inflated?  If you don't -- if you

16  don't have new corrective disclosures, what other evidence

17  would one be offering as a Plaintiff?

18           MR. DALEY:  Well, there's a little bit to unbundle

19  there because this is a price maintenance case.  We cast

20  backwards from at the end, and our expert did that, I think

21  very skillfully.  Our expert did an event study which their

22  expert did not do.  Our expert did an event study isolating J&J

23  specific information to that day of the Reuters report, and

24  concluded that that report was the only thing that could have

25  impacted Johnson & Johnson's stock price that day.

Page 43

1          Defendant's expert didn't even bother to do that.  He
2     pointed to two things.  Number one, that each one of the -- the
3     tired old argument, now that each one of the 56 documents was
4     no longer new, they had been aired previously.  And the second
5     one was that the tone of a pessimistic Reuters article somehow
6     was what caused the stock -- was what drove the price impact
7     that day.
8          And we know that's not true.  And I've got twenty
9     reasons.  I could stay up here 15 more minutes, but I'll give
10    you just one.  After the Reuters report came out the next
11    month, January of 2019, inside J&J, an executive committee memo
12    to the executive committee said, quote -- the Reuters report,
13    quote, "led to a ten percent stock decline and $40 billion
14    market cap loss".  And that's in the record at page 4307.  That
15    admission didn't say, you know what?  It was a kind of a nasty,
16    pessimistic article.
17         JUDGE CHUNG:  That doesn't mean it's price impact.
18    That can just be price reaction.
19         MR. DALEY:  Well, as I said before --
20         JUDGE SHWARTZ:  The answer wasn't very responsive to
21    the question I was asking.  So sorry.
22         MR. DALEY:  All right.
23         JUDGE SHWARTZ:  Because I was -- if I understood the
24    beginning, before you started talking about January 2019, what
25    you were saying is one way that one could prove price impact is

Page 44

1    to say if there's evidence out there, there's company-specific

2    information in the market, and there is a drop --

3              MR. DALEY:  Um-hum.

4              JUDGE SHWARTZ:  -- chronologically after that

5    disclosure --

6              MR. DALEY:  Um-hum.

7              JUDGE SHWARTZ:  -- that would be sufficient to draw an

8    inference that at some point earlier, the price at the time of

9    purchase was inflated.

10             MR. DALEY:  Yes.

11             JUDGE SHWARTZ:  So is your focus company-specific

12   information, not newness.

13             MR. DALEY:  And I hate -- I --

14             JUDGE SHWARTZ:  And if I'm wrong, tell me.  I'm just

15   trying to --

16             MR. DALEY:  No, no.  I really regret to sound --

17             JUDGE SHWARTZ:  -- pivot off of Judge Restrepo.

18             MR. DALEY:  -- obstinate here, Your Honor, but it is

19   not our burden.  It is their burden.

20             JUDGE CHUNG:  But this is a legal question.

21             MR. DALEY:  They are the ones that have to --

22             JUDGE SHWARTZ:  Yeah, but this is --

23             MR. DALEY:  -- they're the ones that have to disprove

24   that price impact.

25             JUDGE SHWARTZ:  I understand whose burden of proof it

Page 45

1   is, but we're trying to get educated on what the law is or what

2   you think it should be.  And if the position is, it's got to

3   be -- a corrective disclosure is a way to prove it, could --

4   and I'm pivoting off of an answer you gave to Judge Chung,

5   company-specific information, new or not --

6            MR. DALEY:  Um-hum.

7            JUDGE SHWARTZ:  -- if there is something that happens

8   thereafter, it could be used as a basis to make an inference

9   forward.

10           MR. DALEY:  Sure.  And --

11           JUDGE SHWARTZ:  Am I understanding you correctly?

12           MR. DALEY:  Yes, you are.

13           JUDGE SHWARTZ:  All right.

14           MR. DALEY:  And our expert went well beyond what we

15  needed to show.  Our expert did some of the work that their

16  expert did not do, as a matter of fact, so.

17           JUDGE SHWARTZ:  Judge Restrepo, any others?  Judge

18  Chung?

19           Okay.  Thank you, Counsel.

20           MR. DALEY:  Thank you, Your Honors.

21           JUDGE SHWARTZ:  All right.  We'll hear from counsel on

22  rebuttal.

23           MR. HOCHMAN:  Thank you, Your Honors.

24           Let me pick up right where you left off with this

25  event study issue.  The event study doesn't address price

Page 46

1   impact at all.  What an event study does is it explains why the

2   drop in a particular company's stock price is not due to forces

3   that are industry wide or generally, market wide.  Like, if you

4   lost money yesterday, an event study isn't going to tell you

5   whether that was corrective, right?  You need something else

6   because stocks drop for lots of reasons.

7          And the position that I understood my friend to take

8   just now is a direct rejection of the price reaction versus

9   price impact distinction that's at the heart of this case.

10  They don't think they need -- they think they can say they can

11  point to an event study, can point to a big drop, label

12  something corrective, and they're done.

13         And that's exactly what the new and corrective

14  position we've taken is resisting.  And just, let's -- and I

15  also want to return to something that we didn't discuss, which

16  was the District Court's errors in this case.  The District

17  court did not say that there was any new fact.  In fact, at 101

18  and again at 102, it said, I don't even have to decide at the

19  class certification stage whether a corrective disclosure is

20  corrective.  At 96, said it doesn't matter if the information

21  is not new.  That's fine.

22         Those are legal errors, and automatically, and without

23  any basis in fact, those legal errors are the basis of the

24  class certification in this case.  So if you agree with us that

25  the information in a corrective disclosure, if we demonstrate

Page 47

```
1    that in a price -- in this kind of price maintenance case, that

2    the corrective disclosure is not new facts, Judge Chung.

3         Facts.  And I really want to emphasize this.  It's not

4    enough if it's just some other stuff, and I'll get to that in a

5    minute.  Get to the handful, three things they pointed to today

6    that they say are new, but if it's not new and it's not

7    corrective, then the corrective disclosure cannot -- the

8    alleged corrective disclosure cannot carry price impact as a

9    matter of law.

10         We have the burden to demonstrate the absence of

11    newness and the absence of correctiveness.  We've done that

12    here.

13         JUDGE SHWARTZ:  You said it's a matter of law --

14         MR. HOCHMAN:  And the District Court didn't find that.

15         JUDGE SHWARTZ:  Tell us what case you're relying on.

16    Exactly what case says it has to be new and corrective.

17         MR. HOCHMAN:  So the combination of cases, I think,

18    are Omnicom and Meyer are very clear on new.  And I think

19    corrective is very -- it comes right out of Goldman.  And

20    there's no way -- there's no way to read that out of Goldman.

21         Now, let's talk about the new -- the District Court

22    didn't identify any new facts.  The briefing before the

23    District Court by the Plaintiff did not identify any new facts.

24    The briefing on appeal didn't identify any new facts.

25         Today, we heard Langer repeating, standing by his
```

Page 48

1    prior information.  He didn't say he did a new study.  That's

2    not a new fact.  That's just another new opinion standing by

3    his previous fact.  That doesn't change the mix of information

4    that goes into the marketplace through the efficient market

5    hypothesis.

6         They say the -- they say this test about the

7    concentration.  If you look at 4882 of the record, you'll see

8    exactly where we demonstrate that that had been previously

9    disclosed months before the Reuters report, during the Ingham

10   trial.

11        And then they referred to another previous report that

12   had been truncated.  That was discussed openly in Herford and

13   in Ingham, again, months before the Reuters report.

14        They have no facts.  They have no new facts.  They

15   certainly -- our expert said, there are new facts, but

16   whatever's new about them simply isn't corrective.  And you

17   need both.  And you need both.

18        The repeated denials cannot do the work that they

19   claim they need to do.  That would effectively destroy -- first

20   of all, our repeated denials are well founded given our

21   consistent efforts to prevail in these litigations.  But again,

22   that's not new facts.  We've been repeatedly denying, through

23   the mix of information, for decades.  That doesn't change the

24   mix of information to the marketplace.

25        The factual basis of that information, that's our

Page 49

1   opinion of the facts.  And we're standing by that, of course,

2   but opinions don't count.

3           Judge Shwartz, you asked at the beginning about

4   stopping with -- if you just decide Reuters had new and

5   corrective.

6           JUDGE SHWARTZ:  Yeah, (indiscernible).

7           MR. HOCHMAN:  Obviously, we disagree with the premise,

8   but --

9           JUDGE SHWARTZ:  I understand that.  I just want to

10  know, like --

11          MR. HOCHMAN:  Yeah.

12          JUDGE SHWARTZ:  -- as a -- sitting in review --

13          MR. HOCHMAN:  The answer is -- the answer is you can't

14  stop.  You can't stop.  You have to do the others, and --

15          JUDGE SHWARTZ:  Why, if you can just give me the

16  reason why --

17          MR. HOCHMAN:  Yeah.  Because --

18          JUDGE SHWARTZ:  -- we have to do all of the others?

19          MR. HOCHMAN:  Because the claim -- because the way the

20  class is certified, only people who hold through the corrective

21  disclosure can be part of the class.  And right now you've got

22  six -- you've got essentially, six different class claims based

23  on six different disclosures --

24          JUDGE SHWARTZ:  It's because of the way the class is

25  defining --

Page 50

1           MR. HOCHMAN:  Correct.  And basically --

2           JUDGE SHWARTZ:  -- class period.  That's really the

3    question I have.

4           MR. HOCHMAN:  Yeah.  And basically LabCorp --

5           JUDGE SHWARTZ:  That's all I wanted to know.

6           MR. HOCHMAN:  -- is going to answer -- going to say --

7    well, we anticipate, potentially, LabCorp is going to say if

8    you have uninjured class members in your class, your class is

9    invalid.

10          JUDGE SHWARTZ:  But then you've answered my

11   question --

12          MR. HOCHMAN:  Yeah.

13          JUDGE SHWARTZ:  -- as why.  It has to do with how the

14   class period is defined.  That's all.

15          MR. HOCHMAN:  The last thing I'll say, and Judge

16   Chung, I think you've already anticipated this, is Amedisys and

17   Genius Brands are fundamentally different, right?  In Amedisys,

18   what you have is an allegation, just an allegation, on the

19   complaint that those cases, the facts that are out there were

20   disparate raw data that had to be collected up and it would

21   take more than just zero marginal cost to get to them.  To get

22   the new information that came out of that -- out of that

23   analysis, right?

24          By the way, same thing happened in this case.  They

25   asserted that they made the claim in response to our motion to

Page 51

1    dismiss.  We have our -- the reporter saying this is new

2    information.  We were stuck with that at the class

3    certification stage -- I mean, at the motion to dismiss stage,

4    and so we lost the case.

5          But we got to discovery and we got -- we took the

6    burden of proof and we proved exactly what the people in

7    Amedisys and Genius Brands didn't have a chance to prove yet

8    because they got dismissed on a motion to dismiss.  We proved

9    that it was all not new or not corrective, all of the

10   information, and that the cost of acquiring that information in

11   this kind of efficient market was undeniably zero or near zero,

12   given your own theory of the case.

13         JUDGE SHWARTZ:  Counsel, you're over your time. Let me

14   just see if my colleagues have any further questions.

15         JUDGE CHUNG:  I don't, no.

16         JUDGE SHWARTZ:  Okay.  All right.  Catch your breath.

17   Have a seat.

18         MR. HOCHMAN:  Thank you.

19         JUDGE SHWARTZ:  We thank counsel for both sides for

20   their very helpful briefing and arguments today.  We're going

21   to ask that a transcript of the argument be prepared for the

22   Court, please.  And if the sides could split the cost of that

23   transcript, we'd appreciate it.  And the Court will take the

24   matter under advisement.

25         (Whereupon these proceedings were concluded.)

Page 52

1

2                         C E R T I F I C A T I O N

3

4      I, Megen Strand, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8

9      _____

10     Megen Strand (CET-3360)

11     AAERT Certified Electronic Transcriber

12

13     eScribers

14     7227 North 16th Street, Suite #207

15     Phoenix, AZ 85020

16

17     Date:  March 15, 2025

18

19

20

21

22

23

24

25

**[& - aired]**

| & |
| --- |

**&** 1:11 3:11 4:4
  4:6 31:11,19
  42:25

| 1 |
| --- |

**1** 39:18
**10** 5:23
**100** 34:3 35:18
**101** 46:17
**102** 46:18
**1086** 7:7
**1087** 20:19
**1088** 20:19
**11** 1:19
**11:30** 1:20
**15** 43:9 52:17
**16th** 2:21 52:14
**180** 33:25
**19** 31:12
**1900** 3:14
**19106-1790**
  1:17
**1971** 31:12

| 2 |
| --- |

**2** 17:23 39:19
**2013** 34:1
  41:23 42:6
**2017** 6:13 8:10
  9:12 31:13
  33:4
**2019** 42:2
  43:11,24

**2025** 1:19
  52:17
**207** 2:21 52:14
**21** 6:23
**24-1409** 1:8 4:4
**257-0885** 2:23
**2985** 52:8

| 3 |
| --- |

**3360** 52:10
**3689** 17:12

| 4 |
| --- |

**40** 43:13
**4307** 43:14
**4882** 48:7
**493** 9:20

| 5 |
| --- |

**50s** 32:23
**56** 26:21 43:3

| 6 |
| --- |

**601** 1:16
**60603** 3:6
**60s** 32:23
**655** 3:13

| 7 |
| --- |

**70s** 32:23 33:1
**7227** 2:21
  52:14

| 8 |
| --- |

**800** 2:23
**85020** 2:22
  52:15

| 9 |
| --- |

**90** 17:12
**92101** 3:15
**95** 9:20
**96** 46:20

| a |
| --- |

**aaert** 52:11
**abandoned**
  8:20
**ability** 39:10
**able** 19:11
**absence** 47:10
  47:11
**absorbed** 9:8,9
**absorbs** 15:19
**abused** 29:2
**accessible** 37:1
**accomplished**
  27:3
**accountants**
  14:23
**accounting**
  14:22,24
**accurate** 33:5
  52:5
**acquiring**
  19:14 51:10
**acting** 36:4
**action** 4:8
**actions** 25:22
  40:21 42:5
**actively** 21:21

**actually** 8:19
  13:15 19:7
  21:11 26:23
  29:6 32:10
  36:14 37:16
  41:25
**add** 12:14
  38:18
**additional**
  13:24
**address** 45:25
**adduced** 39:9
**adhere** 40:12
**admission**
  43:15
**admits** 39:5
**adversaries**
  6:15
**adversary** 22:9
**advisement**
  51:24
**affect** 9:18
**affidavit** 10:24
**affirmative**
  16:9 39:1
**affirmatively**
  23:6 39:15
**agree** 14:13
  28:4 32:11
  38:13 46:24
**ahead** 11:24,24
  11:25 12:1
**aired** 43:4

**al** 1:11
**allegation** 50:18,18
**allege** 21:2
**alleged** 10:21 15:1,2 19:23 19:24 24:14 31:3 32:6,20 47:8
**allowed** 23:19
**amedisys** 14:1 38:1 50:16,17 51:7
**american** 35:18
**amount** 9:23
**analysis** 11:22 14:17 22:17 27:18 29:22 50:23
**analyst** 34:20
**analysts** 8:25 19:17 34:19 35:19,21
**answer** 43:20 45:4 49:13,13 50:6
**answered** 50:10
**anti** 19:24
**anticipate** 50:7
**anticipated** 50:16
**anyway** 11:20

**apologize** 16:25 39:18
**appeal** 11:5,5 35:24 47:24
**appeals** 1:2,14
**appeared** 37:9
**appellant** 3:4
**appellants** 1:12
**appellate** 4:4
**appellee** 1:9 3:12 26:10
**appellees** 20:3
**appendix** 39:3
**appreciate** 26:7 40:11 51:23
**archive** 20:5
**area** 24:20
**areas** 41:2
**argue** 38:10
**arguing** 40:24
**argument** 4:2 6:4 10:7 11:11 11:19,19 23:18 26:19 36:15,16 43:3 51:21
**arguments** 6:5 51:20
**arthur** 31:11
**article** 6:1,6,25 8:3 20:21 26:22 27:10 28:4 33:4 43:5 43:16

**asbestos** 20:1 31:12,20 32:13 32:15,19,21 33:22 34:2,21 34:22,24 40:20 41:10 42:1,2
**asked** 32:4 39:1 49:3
**asking** 23:12 29:21 30:24 41:21 43:21
**aspect** 20:21
**aspersions** 39:20
**asserted** 22:17 50:25
**assertion** 7:1,1
**association** 1:8 4:3 26:11
**assume** 12:11 21:13,16 28:10
**assurance** 40:22
**attack** 23:19
**attorney** 3:4,12 34:15
**attorneys** 34:16
**austin** 3:3
**authority** 12:17 14:8 16:14
**automatically** 46:22
**available** 19:20 20:13 21:8

26:14
**average** 18:24 19:2
**aware** 4:12 6:5 7:8 8:7,7,22 10:18,22 30:22 42:7
**az** 2:22 52:15

**b**

**b** 1:22
**back** 6:7,9 7:17 10:4 18:4,5 19:9 24:2 26:3 27:12 29:1,12 31:14 36:8
**backwards** 42:20
**bad** 15:12 21:5
**based** 18:9 34:7 49:22
**basic** 17:13 19:22,22,24 20:13,14 22:11 25:12,14,15,16 38:22
**basically** 32:13 33:4 50:1,4
**basis** 7:20 12:5 13:5,16 45:8 46:23,23 48:25
**beg** 16:22
**began** 8:15

**beginning**  9:7 43:24 49:3
**behalf**  22:11
**believe**  38:25
**benefit**  26:1
**bernstein**  7:19 7:20 8:3,6,6 15:14
**best**  12:17
**better**  31:21
**beyond**  40:3 45:14
**big**  10:6 46:11
**billion**  43:13
**bit**  5:12 37:2 42:18
**bloomberg**  7:19 8:2,2,17 8:18,18 34:18
**board**  17:18
**bother**  43:1
**bought**  12:10 42:15
**brand**  31:19,25 36:20,24
**brands**  38:2 50:17 51:7
**breath**  51:16
**brief**  27:3
**briefing**  47:22 47:24 51:20
**briefs**  4:19 36:8
**bring**  27:21

**bringing**  21:20
**brings**  41:18
**broad**  26:13 40:1
**broadway**  3:13
**brought**  27:20
**built**  25:21
**burden**  16:5,16 16:17 18:9 23:20,22 25:23 27:22 38:20,21 38:25 39:9,22 44:19,19,25 47:10 51:6
**business**  35:19

**c**

**c**  3:2 4:1 52:2,2
**ca**  3:15
**call**  4:2 17:21 22:9 31:17
**called**  4:13
**cancer**  37:17
**cap**  43:14
**carcinogenic**  32:14
**care**  30:20 34:1
**carol**  37:4,19
**carried**  39:9,21
**carry**  18:9 23:22 47:8
**carrying**  16:15 38:20

**cascade**  7:23
**case**  1:7 4:7 5:15 7:22 8:5 8:18,19 9:21 9:22,23 10:1,4 13:12 14:13,17 15:10,11 16:10 17:21,22 18:13 18:17 19:8,10 20:21 21:24 25:21,25 27:23 30:1 33:10 36:6,17 38:1 41:4,4 42:19 46:9,16,24 47:1,15,16 50:24 51:4,12
**cases**  11:1 14:1 14:2 15:23 19:3,6 22:5,6 38:9 47:17 50:19
**cast**  42:19
**casting**  39:20 39:20
**catch**  51:16
**categories**  40:16 41:5
**categorize**  10:14
**category**  40:17 40:21
**causal**  37:16

**causation**  11:19 30:20 36:16 38:4
**caused**  43:6
**cert**  10:4
**certain**  33:2
**certainly**  7:17 9:12 12:13 27:19 32:22 48:15
**certification**  11:22 30:25 46:19,24 51:3
**certified**  49:20 52:11
**certify**  52:4
**cet**  52:10
**cetera**  27:16
**chance**  51:7
**change**  48:3,23
**characterizati...**  33:13
**chart**  7:1 33:18
**charts**  5:23 6:2 20:19
**chicago**  3:6
**choices**  18:17 18:18
**choose**  18:14
**chronologica...**  44:4
**chung**  1:24 11:23 12:2,9 12:20,21,23

13:1,4,7,11,14
13:19,23 15:5
19:21 20:12,23
21:25 24:2,12
24:23 25:4,7
25:11,14,16
27:4 32:3,9,12
32:17 33:12,18
33:23 34:4,7,9
35:12 37:20,23
38:4,19 40:5,9
40:11,14,20
41:7,12,15,21
42:3,8 43:17
44:20 45:4,18
47:2 50:16
51:15
**chung's**  35:2
**cindy**  1:23
**circuit**  1:3,15
1:25 14:25
28:14 38:2
**citation**  39:2
**cited**  15:24
**claim**  4:23 5:3
34:3 48:19
49:19 50:25
**claims**  49:22
**class**  4:8 9:5,7
10:4 11:22
17:10 23:3
25:22 27:13
28:18 29:23
30:25 34:13

38:21 39:24
42:2 46:19,24
49:20,21,22,24
50:2,8,8,8,14
51:2
**clear**  23:20
47:18
**clearly**  27:14
**click**  20:6,7,8
**client**  28:15
**clients**  38:24
**colleague**  32:4
40:7
**colleagues**
16:21 51:14
**collected**  50:20
**combination**
47:17
**come**  10:4
14:23 39:3,19
**comes**  12:10
14:3 15:18
24:24 25:24
47:19
**coming**  7:23
29:18 34:19
36:3 38:8
**commitment**
34:2
**committee**
43:11,12
**company**  4:16
4:17 14:23
35:18 44:1,11

45:5
**company's**
4:14 35:20
46:2
**competition**
17:15
**competitive**
17:11
**complaint**
10:16 41:15
50:19
**completely**  7:6
7:8,11 32:11
**conceal**  9:25
**concealed**  9:23
**concede**  32:1
38:23
**conceded**  31:9
31:10 39:6
**concedes**  31:19
**concentrates**
26:17
**concentration**
31:21 33:3
48:7
**concern**  32:24
**concerning**
10:13 27:14
**conclude**  28:17
**concluded**  27:9
42:24 51:25
**conclusions**
27:14

**connected**  9:23
24:14
**connection**
20:20 37:16
**consider**  16:1,4
29:7,11
**considering**
26:14
**consistent**
48:21
**constant**  11:14
**contain**  4:20
32:14 40:20
**contained**  28:5
**contaminated**
35:4,5
**contents**  27:1
**context**  38:6
**continues**
10:22
**contrary**  39:4
**controversy**
32:20
**convey**  26:20
**correct**  4:21
11:12,13,15,16
18:11 22:24
24:11,15 25:6
40:25 41:22
50:1
**corrected**  13:15
32:10 34:12
**correcting**  12:4

**correction** 12:4
12:6,12 13:1,8
24:3,4 25:4,8
33:8,11 34:4,5
34:10
**corrections**
13:7,9,10
32:20 40:24
41:22
**corrective** 5:14
8:19 10:19
13:18,21,22
14:3 16:11,18
17:20 18:15,19
18:19 19:25
22:12,17,17,22
22:25 23:1,2
23:25,25 24:6
24:7,12 25:11
27:10 28:5,17
29:7,17 30:8
32:6,6 35:9
36:1,4,5,19,22
40:21 42:3,4,5
42:11,16 45:3
46:5,12,13,19
46:20,25 47:2
47:7,7,8,16,19
48:16 49:5,20
51:9
**correctiveness**
47:11
**correctly** 26:15
45:11

**cost** 11:1 19:13
22:2,5,6 50:21
51:10,22
**counsel** 17:1
26:3 45:19,21
51:13,19
**count** 12:6
13:16 15:23
16:11 23:25
24:3 33:10
34:10 49:2
**counts** 22:7
25:9
**county** 1:7 4:3
26:10
**course** 11:3
17:8 25:25
28:20 32:11
34:17 49:1
**court** 1:2,14
4:2,6,11 7:4
9:24 26:9,12
26:13 27:13,20
28:13 29:2,3,7
29:10,21 30:2
30:19 31:1
35:10 36:14,19
38:13 40:1,4
46:17 47:14,21
47:23 51:22,23
**court's** 46:16
**covered** 27:1
**created** 5:23

**credence** 22:23
**cross** 37:10
**current** 10:15
10:16

**d**

**d** 3:17 4:1
**daley** 3:17 26:9
26:9 27:8,11
27:17,19 28:1
28:7,12,16,20
28:23 29:1,9
29:24 30:6,9
30:11,13,16,19
30:23 31:1,7
32:8,11,16
33:12,20,24
34:6,8,11 35:6
35:10,14,17
36:10,13 37:2
37:22 38:1,6
38:12 39:11,14
39:17 40:8,10
40:13,19 41:1
41:8,13,18,25
42:7,12,18
43:19,22 44:3
44:6,10,13,16
44:18,21,23
45:6,10,12,14
45:20
**damages** 30:4
**dash** 20:10

**data** 35:12 37:3
50:20
**date** 6:23,23
52:17
**day** 22:1 38:15
42:23,25 43:7
**days** 7:21
**dearborn** 3:5
**decades** 31:19
34:22,23,24
41:6,14 48:23
**decide** 18:15
46:18 49:4
**decided** 18:16
**declassified**
20:7
**decline** 43:13
**declines** 18:2
**defend** 22:5
**defendant** 16:4
**defendant's**
26:19 27:22
43:1
**defendants**
26:15 29:4
31:5 33:20
34:13 38:13,20
**defending** 11:2
**define** 36:7
**defined** 50:14
**defining** 49:25
**definitely** 32:24
**degrees** 33:25

**deliberately**
34:25
**demonstrate**
11:6 16:5 23:1
23:3 46:25
47:10 48:8
**demonstrated**
28:5 29:19
**demonstrates**
14:18
**demonstrating**
39:9
**denial** 35:4,5,8
35:15,17
**denials** 11:14
34:20 37:4
48:18,20
**denying** 34:14
48:22
**depends** 20:22
22:16
**deposition**
26:24
**described** 35:3
**destroy** 48:19
**deteriorate**
39:16
**devoted** 19:18
**diego** 1:7 3:15
4:3 26:10
**different** 13:5
13:25 15:9
33:9 34:7
49:22,23 50:17

**differently**
15:21
**dig** 35:19,20
**direct** 46:8
**disagree** 33:13
49:7
**disclosed** 5:3,6
6:22 7:3 14:21
48:9
**disclosure** 6:13
6:22 7:20,22
8:6,14,19
12:22 16:11
19:25 20:24
22:25 24:7
25:11 32:6,10
36:5 42:11
44:5 45:3
46:19,25 47:2
47:7,8 49:21
**disclosures**
4:19,24 6:11
6:21 7:18
10:11,20 18:15
18:19,24 22:12
22:18,23 23:3
23:25,25 27:16
28:15 29:4,7
29:22 30:8
31:4 42:4,4,16
49:23
**discount** 23:7
23:11

**discounting**
16:15 22:12
**discovery** 51:5
**discretion**
26:13 29:2,16
40:2
**discuss** 46:15
**discussed** 7:3,4
10:19 17:12,13
48:12
**discussion**
27:21
**discussions**
8:24
**dismiss** 30:21
38:5 40:15,23
51:1,3,8
**dismissed** 51:8
**disparate** 50:20
**disprove** 26:15
27:22 44:23
**disproved** 39:4
**dispute** 19:15
**disputed** 15:10
15:11
**disputing** 34:17
**distinction** 4:9
46:9
**district** 9:24
26:13 27:13,20
29:2,3,10 30:1
30:17,19 40:1
46:16,16 47:14
47:21,23

**document** 20:3
27:4,5 37:12
37:13 38:15
**documents**
20:9 26:22,24
43:3
**doing** 21:14,21
22:7,14,15
31:1 32:3
35:15,17
**dollar** 19:18
**doubts** 19:19
**dowd** 3:11
**dr** 31:9,11,14
31:17,18 32:1
39:5
**dramatically**
27:23
**draw** 44:7
**dressed** 36:16
**drop** 9:3 18:6
44:2 46:2,6,11
**drops** 9:10 10:5
14:24
**drove** 43:6
**due** 46:2
**dump** 27:6
38:16
**dumped** 12:7
27:4 38:15
**dumps** 20:3
**duty** 31:1

**e**

e  1:22,22 3:2,2
  4:1,1 52:2
earlier  29:3
  31:3 33:14
  38:18 44:8
early  6:12
easy  21:10
  40:14
educated  45:1
effectively
  48:19
efficient  14:4
  14:18 15:6,7
  15:19 17:8
  18:21 21:22
  48:4 51:11
effort  21:11,25
efforts  10:23
  48:21
eight  22:1
einhorn  14:17
either  38:15
electron  31:22
electronic
  52:11
elements  15:9
eligible  24:8,9
embedded
  26:19
emphasize  47:3
employees  1:7
  4:3 26:10

enormous
  19:19
entire  14:12,12
  27:12,20 29:3
  29:23
equal  16:15
erred  27:14
errors  14:21,22
  46:16,22,23
escribers  2:20
  52:13
escribers.net
  2:24
esq  3:8,17
essentially
  49:22
established
  32:19
establishing
  26:20
et  1:11 27:15
evaluate  27:13
  30:2
evaluated
  30:10
evaluating
  15:21
evaporates
  23:4
evening  34:18
event  42:21,22
  45:25,25 46:1
  46:4,11

everybody
  19:17 21:18
evidence  5:2,5
  16:1,3,5,9,15
  22:10,13,20,21
  22:22,24 23:6
  23:8,9,10
  25:20,21 26:14
  26:16 31:2
  34:17 39:2,9
  39:16 40:3
  42:13,16 44:1
exactly  9:9
  16:13 24:21
  46:13 47:16
  48:8 51:6
examination
  37:11
example  8:17
  14:16 35:1
  36:18 37:7,7
  38:2
examples  13:23
  37:24
except  7:18
exclusively
  20:22
executive  43:11
  43:12
executives
  37:14
expert  17:12
  31:8,9,18 39:5
  42:20,21,22,22

43:1 45:14,15
  45:16 48:15
experts  14:13
explain  32:2
explains  19:13
  46:1
exposure  9:11
extremely
  32:18

**f**

f  1:22 52:2
faced  9:11
facing  26:12
fact  5:8,12 8:3
  10:12 11:6
  12:11 14:3
  16:13 17:17
  18:14 20:20
  22:25 24:3,5,5
  24:24 25:2,2,8
  26:1 27:22
  39:4 41:9,25
  45:16 46:17,17
  46:23 48:2,3
facts  6:25
  10:19 13:17,23
  13:24,25 14:2
  15:2,13,15
  20:1,16 21:3
  26:19 31:25
  47:2,3,22,23,24
  48:14,14,15,22
  49:1 50:19

factual  48:25
failed  26:15
fairly  38:8
falls  41:13
false  4:17 5:14
  5:14 9:22
  10:21 13:22
  15:1,2,16
  17:24 18:1,1,5
  18:20 21:4
  36:3 41:14
far  32:7
favor  40:4
favorite  14:2
fda  35:1 42:2
february  27:15
felipe  1:23
fifth  38:1
finances  35:20
financial  4:14
find  9:21 21:9
  21:10 29:16
  30:12 37:14
  47:14
findings  31:15
fine  46:21
finished  12:20
firm  7:19 8:3
  15:14
firm's  15:15
first  5:3,4,6
  6:13,22 7:12
  7:25 8:13,18
  14:11,15 19:1

19:22 20:7,18
22:14 27:2
29:18 36:11
37:10 48:19
flippant  30:13
flowing  13:10
focus  5:17,25
  8:8 23:15
  26:21 44:11
focused  28:3
focusing  42:3
follow  8:25
  21:14 35:2
force  34:12
forces  46:2
foregoing  52:4
foreseeable
  9:15
forget  5:18,18
  34:13
forth  16:5
  25:19,20 28:15
  29:7 36:8
forward  9:12
  10:5 39:3,19
  41:16,17,19,23
  42:5 45:9
found  31:12
  42:2
foundation
  39:10
founded  48:20
fraud  4:8

free  32:13
  33:22 34:3,22
friend  46:7
friendly  34:19
fully  11:9 14:21
fundamentally
  4:7 50:17
further  51:14

g

g  4:1
gathering  37:3
geller  3:11
generality  32:7
  33:6,9
generally  46:3
generate  10:25
generic  32:10
  32:13 33:14
genius  38:2
  50:17 51:7
getting  32:5
give  17:5 43:9
  49:15
given  10:3
  26:13 39:25,25
  48:20 51:12
giving  34:19
  37:24
go  6:9 7:17,17
  11:24,24,25
  12:1 20:19
  27:12 28:14
  29:1,21 36:14

37:13 40:6
goes  32:4 48:4
going  5:25
  16:20 17:6
  21:5 22:9,9
  24:2 25:18
  29:11,11,12
  34:16 36:2
  37:15 46:4
  50:6,6,7 51:20
goldman  11:21
  15:25,25 16:1
  17:23 23:7
  24:18,21 26:14
  31:2 32:5
  33:15 36:17
  47:19,20
goldman's  33:7
good  4:5 14:16
  15:12 21:5
  38:2
goodrich  37:5
  37:19
gotten  35:24
  38:23
governing  4:8
greedy  35:22
growing  10:23
guess  32:5 34:9
  35:16
guilty  35:24
guys  24:10

| h | | | |
|---|---|---|---|
| **half** 5:9 | 6:24 7:7,10,16 | **huge** 11:4 | **implying** 30:18 |
| **halliburton** | 8:1,11,15 9:9 | **hum** 10:2 12:8 | **importance** |
| 17:23 39:18,19 | 9:14,17,20 | 13:3 20:11 | 15:7 |
| **handful** 47:5 | 10:3,9,15,18 | 23:21,23 24:25 | **important** 5:10 |
| **happen** 11:7 | 11:9,13,16,18 | 40:19 41:7 | 13:25 21:7 |
| 25:18 | 12:8,13,16,19 | 44:3,6 45:6 | **inclined** 38:13 |
| **happened** 8:16 | 12:25 13:3,6,9 | **hypothesis** 14:5 | **including** 37:18 |
| 27:24 50:24 | 13:12,17,20 | 14:12,19 15:7 | **incorporate** |
| **happens** 39:23 | 14:9,11 15:6 | 15:8,19 17:9 | 19:11 |
| 45:7 | 15:11 16:2,8 | 18:21 21:22 | **incorporates** |
| **happy** 40:10,10 | 16:12,17,22,25 | 48:5 | 14:4 |
| **hard** 19:10 | 17:2,4,8 18:11 | **i** | **indiscernible** |
| **hate** 44:13 | 18:13 19:1 | | 49:6 |
| **health** 4:15 | 20:11,18,24 | **identified** 7:2 | **indulgence** |
| **hear** 45:21 | 22:2,14,21,24 | 8:19 | 16:22 |
| **heard** 38:18 | 23:9,13,16,19 | **identify** 47:22 | **indulging** |
| 47:25 | 23:22,24 24:5 | 47:23,24 | 36:22 |
| **hearing** 35:22 | 24:15,18,21,25 | **ignored** 31:24 | **industry** 46:3 |
| **heart** 46:9 | 25:6,10,13,15 | **ignores** 26:19 | **inefficient** 15:5 |
| **held** 26:15 | 25:17 26:5,7 | **il** 3:6 | **infamous** 37:5 |
| **helpful** 51:20 | 45:23 47:14,17 | **impact** 4:9 9:1 | **infer** 18:4 28:9 |
| **herford** 7:17 | 49:7,11,13,17 | 15:1 22:17 | **inference** 44:8 |
| 48:12 | 49:19 50:1,4,6 | 24:8 25:15 | 45:8 |
| **hey** 33:1 | 50:12,15 51:18 | 26:16 27:22,23 | **infers** 18:5 |
| **hid** 34:25 | **hold** 49:20 | 28:6 29:18 | **inflated** 23:4 |
| **hide** 33:2 | **holding** 40:2 | 36:16,18 39:4 | 28:10 42:15 |
| **historical** 41:22 | **holds** 19:9 | 39:6,23 40:2 | 44:9 |
| **hitting** 34:17 | **hon** 1:23,23,23 | 42:14 43:6,17 | **inflation** 17:21 |
| **hochman** 3:8 | **honor** 22:2 | 43:25 44:24 | 18:4,16 |
| 4:5,6,21,25 5:8 | 28:21 44:18 | 46:1,9 47:8 | **information** |
| 5:20,22,25 6:3 | **honors** 4:5 | **impacted** 42:25 | 4:14,20,23 5:3 |
| 6:8,10,14,17,19 | 45:20,23 | **impacts** 19:18 | 5:6,12,13,13 |
| | **hours** 22:1 | **implied** 30:17 | 6:7,11 7:12 |
| | | | 8:13,24 9:16 |

12:18 17:11,14
17:25 19:14,20
20:15 21:20,23
26:2,21 27:10
28:5 29:17
34:19 35:3,4,9
35:13 36:2,9
36:19,21,22,23
38:3,14 42:10
42:11,23 44:2
44:12 45:5
46:20,25 48:1
48:3,23,24,25
50:22 51:2,10
51:10
**ingham**  11:4
29:5 35:24
37:9 48:9,13
**initiative**  41:17
**injury**  31:13
**inside**  43:11
**insist**  31:7
**instance**  4:18
12:6
**intelligible**
18:24
**interested**
37:21
**interesting**  8:5
**interface**  20:5
**internal**  26:24
**internally**  34:1
**intuitive**  21:9

**invalid**  50:9
**inverse**  20:15
**investigation**
13:24
**investments**
19:18
**investor**  19:4
**investors**  19:15
**involved**  26:23
**ish**  6:23 8:10
**isolating**  42:22
**issue**  5:15 6:25
9:22 10:20
20:20,21 21:24
26:12 45:25

**j**

**j&j**  7:15 9:1,11
20:8 22:4,5,11
26:17,24 31:14
31:16 32:21
33:25 35:23,23
36:3 37:5,14
41:5,8 42:1,5
42:22 43:11
**j&j's**  6:12
41:23
**january**  43:11
43:24
**jn8432**  20:10
**job**  8:25 21:12
21:13,16,17
22:3,7 35:19

**jobs**  21:14,21
**johnson**  1:11
1:11 4:4,4,6,6
31:11,12,19,19
42:25
**johnson's**
42:25
**joseph**  3:17
26:9
**judge**  4:2,18,22
5:1,18,21,24
6:2,5,9,11,15
6:18,20 7:6,8
7:11,25 8:7,12
9:4,13,15,18
10:2,7,10,17
11:8,11,14,17
11:23,24,25
12:1,2,9,14,17
12:20,21,22
13:1,4,7,11,14
13:19,23 14:6
14:7,7,10 15:5
15:10,25 16:3
16:9,14,20,23
17:1,3,5 18:8
18:12,23 19:21
19:21 20:12,23
21:25 22:8,19
22:22 23:5,11
23:14,17,21,23
24:2,10,12,16
24:19,23,23
25:1,4,7,11,14

25:16,19 26:3
26:6,8 27:4,7,9
27:12,18,25
28:2,8,13,17,22
28:24 29:6,20
29:25 30:7,10
30:12,15,18,22
30:24 31:6
32:3,9,12,17
33:12,18,23
34:4,7,9 35:2,2
35:7,11,12,15
36:7,11,25
37:20,20,23
38:4,10,19,19
39:1,8,11,12,15
40:5,6,9,11,14
40:15,20 41:7
41:12,15,21
42:3,7,8,9,9,13
43:17,20,23
44:4,7,11,14,17
44:17,20,22,25
45:4,7,11,13,17
45:17,17,21
47:2,13,15
49:3,6,9,12,15
49:18,24 50:2
50:5,10,13,15
51:13,15,16,19
**judgements**
10:6
**judges**  1:25

| | | | |
|---|---|---|---|
| **judgment** 19:6 | **l** | **liabilities** 22:4 | **looking** 8:8 |
| **july** 27:15 | **l** 1:23 | **liable** 11:6 | 29:2,13 31:3 |
| **jump** 26:18 | **lab** 31:24 | **light** 38:15 | 41:16,17,19 |
| **jury** 10:8 | **labcorp** 50:4,7 | **likely** 32:9 | 42:5 |
| **k** | **label** 46:11 | **likes** 36:3 | **loss** 11:19 |
| **k** 1:23 | **lacks** 39:10 | **limitations** | 30:20 36:15 |
| **kind** 14:17 | **langer** 31:11,14 | 19:4 | 38:4 43:14 |
| 17:22,23 18:20 | 31:17 47:25 | **line** 12:14 | **lost** 46:4 51:4 |
| 19:3 20:25 | **language** 24:11 | **link** 16:6 23:2 | **lot** 6:24,25 36:8 |
| 21:8,9 39:16 | **lanier** 10:24 | 39:22 | **lots** 4:12 46:6 |
| 43:15 47:1 | 25:24 34:15 | **linked** 26:22 | **m** |
| 51:11 | **lanzo** 29:5 | 37:12,18 | **machine** 20:4 |
| **kleidon** 19:12 | **large** 11:1 | **links** 20:6 | **made** 9:5 29:13 |
| 31:9,18 32:1 | **latest** 36:18 | **listed** 20:5,20 | 34:4,12 37:1 |
| 39:5 | **law** 4:7 7:19 | **litigating** 32:21 | 39:21 50:25 |
| **knew** 13:4 25:7 | 8:3 11:20 | **litigation** 8:23 | **main** 1:7 41:2 |
| **know** 6:20 | 13:12 14:8 | 9:1,11,24 10:5 | **maintains** 4:8 |
| 13:15 17:17 | 15:14,15 18:21 | 11:2 30:7 | **maintenance** |
| 19:9 20:1,6,12 | 25:22 33:10 | **litigations** | 17:22 18:4,17 |
| 22:19 28:22 | 45:1 47:9,13 | 48:21 | 42:19 47:1 |
| 29:13 31:8 | **lawyers** 31:14 | **little** 37:2 42:18 | **make** 9:4 11:1 |
| 33:2 34:23 | 35:23 | **llc** 2:20 | 18:16,17 21:2 |
| 37:14 41:1,14 | **lead** 26:10 | **llp** 3:3,11 | 24:10 27:19 |
| 41:25 43:8,15 | **leads** 14:7 | **lock** 18:18 | 45:8 |
| 49:10 50:5 | **learned** 4:16 | **logic** 14:12 | **making** 11:11 |
| **knowing** 39:18 | **leave** 37:15 | 15:8 | 11:18,19 21:19 |
| **knowledge** | **led** 43:13 | **long** 8:22 9:14 | 36:5 |
| 32:22 | **left** 40:15 45:24 | 25:2 | **march** 1:19 |
| **known** 11:9 | **legal** 37:21 | **longer** 43:4 | 52:17 |
| 19:23,25 20:14 | 44:20 46:22,23 | **look** 9:20 28:14 | **marginal** 19:13 |
| 20:16 33:1 | **legion** 14:1 | 29:11,12 31:2 | 22:2,6 50:21 |
| **knows** 21:19 | **level** 4:11 33:6 | 35:21 39:5 | **mark** 10:24 |
| | 33:8 | 41:15 48:7 | 25:24 34:15 |

**market** 1:16
4:24,25 5:6,11
5:12 6:16,21
6:23 8:12,22
8:25 9:6,9,18
11:10,12 14:4
14:5,12,19
15:4,6,7,16,19
17:9,10,14
18:6,21,25
19:2,5,10,17
20:15 21:3,20
21:22 26:21
28:8 29:18
33:21 34:20
35:21 36:2,4
37:16 38:8,8
39:10 43:14
44:2 46:3 48:4
51:11
**marketplace**
6:7 8:13 21:12
21:14 48:4,24
**markup** 34:1
37:10
**match** 18:20
24:13 32:6
**matches** 24:6
**material** 5:15
9:3 13:5 25:7
28:9 38:24
**materiality**
30:20

**materialized**
10:6
**math** 19:8
**matter** 1:6 14:2
17:16 21:18
25:3 45:16
46:20 47:9,13
51:24
**matters** 32:24
**mean** 5:13,14
5:23 7:16
13:14 20:4
23:9 25:18
30:13,15 37:7
43:17 51:3
**meaning** 6:12
42:14
**means** 17:16,17
21:23
**mechanical**
17:22
**media** 27:1
**megen** 2:19
52:4,10
**members** 50:8
**memo** 43:11
**memos** 26:24
**mention** 27:3
**mentioned**
15:25
**merck** 19:7,7,8
21:13,21
**met** 25:23
38:17

**metadata** 37:19
**method** 31:20
31:21
**methods** 33:2
**meyer** 14:1,17
47:18
**microscope**
31:22
**minute** 47:5
**minutes** 17:2,3
17:5 43:9
**mischaracteri...**
20:2
**misconduct**
39:23
**mismatch**
13:21
**misrepresent...**
12:5,6,9 16:6
19:23 24:16
25:3 28:10
32:10 33:11,24
33:25
**misrepresent...**
9:8 10:12
32:12 40:16,25
41:23
**misstatements**
33:14
**mix** 48:3,23,24
**money** 46:4
**monitor** 21:15
21:15 22:4,4,4
22:5

**month** 43:11
**months** 48:9,13
**morning** 4:3,5
**motion** 30:21
38:5 40:15,23
50:25 51:3,8
**mount** 31:10,11
**move** 4:12,15
5:16 15:16
21:3
**movements**
4:13
**moving** 41:23
**msnbc** 34:18
**multiple** 13:9
**muting** 36:2,3

**n**

**n** 3:2,8 4:1 52:2
**names** 20:9
**nasty** 43:15
**nature** 17:11
**near** 51:11
**necessarily**
5:11 34:11
**need** 10:25 18:3
23:14 27:19
28:14 36:7
42:10,11 46:5
46:10 48:17,17
48:19
**needed** 29:21
30:2,3,10
45:15

**neglected** 33:5
**negligence**
   32:25
**neither** 20:25
**never** 12:7
   30:16 38:14
**new** 4:14,16,20
   4:23 5:3,7,7,12
   5:13 6:12 7:14
   7:15 8:9,9 12:3
   12:5,18 13:14
   13:15,16,17,18
   13:21,22,24
   14:3,10 15:20
   17:20,25 18:19
   18:23 19:14
   23:1 24:3,4,5,6
   25:2,8,9,19
   26:20 27:10
   28:5,18,18
   29:17 31:7,19
   31:25 32:2,17
   32:24 33:10
   34:10 35:9
   36:7,11,12,20
   36:21,23,24
   37:8,8,8,23,25
   38:7,11,14
   39:7 41:17
   42:10,11,16
   43:4 45:5
   46:13,17,21
   47:2,6,6,16,18
   47:21,22,23,24

48:1,2,2,14,15
48:16,22 49:4
50:22 51:1,9
**newness** 12:3
   23:11 37:24
   44:12 47:11
**news** 36:5
**newspapers** 7:3
**noncarcinoge...**
   40:17
**north** 2:21
   52:14
**noted** 26:23
   31:16
**number** 4:4
   10:23 22:6
   41:13 43:2

### o

**o** 1:22 4:1 52:2
**obligation** 28:3
**obscure** 20:9
   38:16
**obstinate** 44:18
**obvious** 39:23
**obviously** 49:7
**occurred** 7:22
**october** 33:4
**offering** 42:17
**oh** 11:23 12:21
   15:20 33:18
   40:8
**okay** 6:10,18
   11:17 24:23

26:6 30:19
36:21 37:8,22
40:5 42:8
45:19 51:16
**old** 37:25 43:3
**omnicom** 14:1
   14:15,20,25
   47:18
**once** 11:3 23:1
   33:1 34:4
**ones** 18:15,16
   44:21,23
**opaque** 18:24
**open** 7:4
**openly** 48:12
**operations** 2:24
**opinion** 13:25
   15:22 48:2
   49:1
**opinions** 15:21
   15:22 49:2
**opponent** 38:20
   41:2
**opportunities**
   17:15,16 21:20
**optimal** 31:23
**order** 11:1
**original** 12:5
   18:5
**originally** 8:20
**outside** 31:23
   41:8
**ovarian** 37:17

**overall** 38:6
**overlap** 29:15
**overturned**
   35:24
**own** 31:8 34:16
   39:5 51:12

### p

**p** 3:2,2 4:1
**pa** 1:17
**page** 34:2
   37:10,13,18
   39:2 43:14
**pages** 26:24
   37:11
**paid** 16:7
**panel's** 7:8
**paraphrasing**
   39:20
**pardon** 34:20
   36:1
**part** 8:16 13:15
   29:9 31:4
   49:21
**partial** 13:10
   31:3
**participant**
   18:25 19:2
**particular**
   37:11 46:2
**past** 41:22
**patty** 1:23
**pay** 15:18

**pdfs** 27:5
**penumbra** 29:15
**people** 10:23
    15:15,21 17:17
    19:16 21:12,13
    21:19 22:3
    49:20 51:6
**percent** 43:13
**perfect** 8:17
    28:20
**period** 9:7 17:6
    27:13 28:18
    29:23 34:13
    38:21 39:24
    42:2 50:2,14
**permits** 11:20
**personal** 31:13
**persons** 34:14
**persuasion** 16:5
**pessimistic** 43:5,16
**ph** 14:1
**philadelphia** 1:17
**phoenix** 2:22
    52:15
**phrase** 21:8
**pick** 45:24
**picked** 19:20
**piece** 36:24
**pivot** 44:17

**pivoting** 45:4
**place** 5:20
    19:17
**plaintiff** 7:13
    22:18 26:10
    42:17 47:23
**plaintiff's** 9:5
    16:15 24:17
**plaintiffs** 4:20
    8:20 9:21
    10:11,23 16:7
    18:9 29:6 30:1
    30:3 35:22
    42:15
**plays** 19:2
**plead** 9:21,25
**please** 4:6 26:9
    30:16 51:22
**pled** 8:20 18:13
**plenty** 13:12
**point** 5:7,10 6:6
    6:12,15,16,20
    7:14 8:9 14:15
    19:21 21:10,11
    21:11 23:7
    25:1 31:18
    32:18 33:7
    35:3,16 36:22
    38:12 44:8
    46:11,11
**pointed** 27:4
    29:4 43:2 47:5
**points** 8:4 31:9

**policy** 41:23
**position** 9:19
    10:10 18:8
    23:5 28:2
    32:21 35:7
    39:8 45:2 46:7
    46:14
**positive** 12:23
**potential** 9:1
    9:11
**potentially** 50:7
**powder** 31:21
    37:17 41:5
**practices** 41:22
**pre** 36:4
**preceded** 7:22
    8:23
**predate** 6:21
**predates** 7:18
**premise** 49:7
**prepared** 51:21
**preponderance** 26:16 40:3
**prepping** 31:21
**presentation** 38:7
**presented** 30:1
    38:9
**pressures** 11:9
**presumes** 4:23
**presumption** 16:18 17:9
    22:11,16 23:2

    24:1 25:20
    38:23
**pretty** 17:12
**prevail** 30:4
    48:21
**previous** 7:4
    48:3,11
**previously** 4:17
    7:2 30:21 43:4
    48:8
**price** 4:9,9,13
    4:13 5:16 8:21
    9:3,10 10:5,22
    14:25 15:1,18
    16:7 17:18,21
    17:25 18:2,4
    18:16 22:16
    23:4 24:7
    25:13 26:15
    27:22,23 28:10
    29:18 36:16,18
    39:4,6,23 40:2
    42:14,14,19,25
    43:6,17,18,25
    44:8,24 45:25
    46:2,8,9 47:1,1
    47:8
**priced** 4:25
    15:3
**prices** 4:12,15
**primary** 31:20
**prior** 17:24
    18:1,1,20 27:4
    27:15 29:4

[prior - recommended]                                      Page 15

32:20 48:1
**pristine** 38:14
**problems** 42:1
**proceedings**
  51:25 52:5
**process** 29:4
  31:4
**produce** 23:6,9
**produced**
  23:10
**product** 7:14
  10:13
**products** 33:21
  40:18 41:10
  42:1
**progress** 35:21
**proof** 16:16
  18:9 38:21
  44:25 51:6
**property** 12:7
  12:23 13:5
**propped** 23:3
**propping** 18:6
**props** 17:24
**prospects** 4:15
**protected**
  41:20
**prove** 18:10
  23:24 42:14
  43:25 45:3
  51:7
**proved** 51:6,8
**proven** 40:2

**proving** 39:22
**pslra** 9:25
**public** 4:14,16
  17:25 25:25
  26:1,2,25
  29:12 38:24
**publicity** 10:25
**publicly** 19:23
  19:25 20:13,14
  20:16 21:8
**purchase** 9:7
  24:17 44:9
**purchased**
  38:24
**purchasers**
  21:4
**purchases** 9:6
**purported** 9:8
**purpose** 30:3
**purposes** 16:4
  19:5 25:11,13
  25:16
**pushed** 10:8
**put** 8:13 11:1
  16:5 25:19,20
  28:15 29:6

**q**

**qualifying** 9:15
**qualitative**
  31:2
**quality** 40:22
**quantifiable**
  33:17

**quantitative**
  31:3
**question** 5:1,4
  5:9 7:12 19:19
  22:8 24:2 28:2
  28:11 32:4
  36:11 37:20
  40:9 41:21
  43:21 44:20
  50:3,11
**questioning**
  12:15
**questions** 5:2
  17:6 41:18
  51:14
**quick** 31:25
**quickly** 18:2
**quite** 39:4
**quote** 31:15,16
  35:9 41:10
  43:12,13

**r**

**r** 1:22 3:2 4:1
  52:2
**r&d** 40:22
  41:12,16 42:5
**rather** 23:6
**rationale** 23:2
**raw** 50:20
**ray** 31:20
**react** 5:11,13
  10:22

**reacted** 5:6
**reacting** 20:15
**reaction** 4:9,13
  5:18 8:14,21
  14:25 26:1
  28:8 43:18
  46:8
**read** 19:22
  32:14 33:16,19
  47:20
**really** 10:8
  15:20 17:16
  21:7 23:14
  28:3 37:8
  44:16 47:3
  50:2
**reason** 49:16
**reasonable**
  19:4
**reasons** 4:12
  5:16 30:7 43:9
  46:6
**rebut** 22:11
  25:20
**rebuttal** 16:4
  16:19 26:4
  45:22
**rebutting** 22:16
  25:14,16
**received** 12:10
**recognize**
  13:12
**recommended**
  31:23

Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

**record** 5:2,19
 5:22 7:2 10:24
 23:18 29:9
 39:25 43:14
 48:7 52:5
**redlining** 37:5
**referred** 48:11
**referring** 33:23
**refers** 33:4
**reflect** 9:10
**reflected** 17:17
**reflecting**
 10:12
**reflects** 18:6
**regret** 44:16
**reintroduce**
 10:5
**rejection** 46:8
**related** 24:13
**reliance** 17:10
 17:22 18:6
 22:16 23:3
 24:1
**relies** 8:3
**rely** 4:20 8:4
 15:13 21:4,4
 23:8 39:10
**relying** 22:10
 22:13 47:15
**remains** 34:21
 34:21
**remember**
 18:14 25:17
 38:19

**repackaged**
 36:25 37:1
**repackaging**
 37:2
**repeat** 34:19
**repeated** 15:2
 48:18,20
**repeatedly**
 34:14 48:22
**repeating**
 35:21 47:25
**report** 12:11
 13:23 14:23,24
 15:15 26:17,20
 26:22 27:24
 29:17 32:1
 39:7 42:23,24
 43:10,12 48:9
 48:11,13
**reported** 27:2
 31:10
**reporter** 51:1
**reporters** 15:22
**reporting**
 26:23
**reports** 8:24
 26:24
**representation**
 9:5
**representations**
 7:13 11:15
**require** 23:6
**required** 11:22
 21:25

**requirement**
 18:25
**requires** 18:21
 21:21,22
**research** 31:24
**researcher**
 31:11
**researchers**
 41:8
**reserve** 16:23
**resisting** 46:14
**respect** 10:20
 21:1 27:14
**respected**
 31:23 35:18
**respectfully**
 33:13
**respond** 4:14
**response** 42:9
 50:25
**responses**
 20:18
**responsive**
 43:20
**rested** 29:23
**restrepo** 1:23
 11:25 12:14,17
 14:7 18:23
 36:7,11,25
 38:10 42:10
 44:17 45:17
**restrepo's** 14:6
 19:21 37:20

**results** 12:24
**retirement** 1:8
 4:3 26:11
**retort** 35:8,8
**return** 46:15
**reuters** 6:1,6
 6:25 15:22
 20:21 26:17,20
 26:22 27:3,9
 27:24 28:4,18
 29:12,16,23
 30:8 31:7,10
 31:16,25 33:3
 36:5,5,23
 37:12,18 39:7
 42:23 43:5,10
 43:12 48:9,13
 49:4
**reveals** 17:25
**revelation**
 32:23
**revelations**
 34:25
**review** 49:12
**right** 8:4,5
 10:10,14,16,16
 10:17 11:19,20
 11:21 13:19
 14:22 15:12,12
 17:13,19,24
 18:7 19:7,16
 21:17 22:3
 23:16 24:18,20
 25:17 26:18

33:20 35:6
36:2 37:3
42:12 43:22
45:13,21,24
46:5 47:19
49:21 50:17,23
51:16
**rightly** 19:9
**rigor** 27:20
**rigorous** 11:21
**risk** 9:11,15,23
10:6 41:3,4
**risks** 11:9
**rob** 4:6
**robbins** 3:11
**robert** 3:8
**role** 19:2
**rolls** 10:5
**room** 19:6
**roughly** 19:14
**routine** 4:12
**rudman** 3:11
**rule** 40:4
**ruling** 30:25
**runs** 15:9

**s**

**s** 3:2 4:1
**sachs** 26:14
31:2 36:17
**safe** 34:3,22,23
**safety** 7:14
10:13 34:1
41:5,17

**san** 1:7 3:15 4:3
26:10
**satisfy** 24:1
**saw** 5:24 38:14
**saying** 9:13
11:16 16:10
34:20 35:12
37:14 38:12
43:25 51:1
**says** 12:22
14:25 15:25
16:1 19:9
20:14,14 25:25
33:5 47:16
**scanning** 31:20
**scienter** 41:18
**seat** 51:17
**second** 5:5,9
8:16 12:22
14:24 17:1
21:1 31:18
37:13 43:4
**secondly** 22:15
**securities** 4:8
25:22
**see** 16:18 20:12
20:20 29:1,14
29:15 48:7
51:14
**seeing** 33:6
**seeking** 21:19
**seem** 32:12,17
40:22,24 41:24

**seneca** 14:20
15:3
**sense** 21:9 30:5
**september** 6:13
6:21,21,23
8:10 9:12
27:15
**sequence** 18:10
35:3
**set** 4:11 20:6
**several** 5:23
**severance** 16:6
**severing** 39:22
**shielded** 26:25
**shifted** 38:25
**show** 45:15
**showed** 34:24
37:19
**showing** 38:23
39:21
**shown** 27:23
38:16
**shows** 4:16
8:13 12:10
13:4 39:3
**shwartz** 1:23
4:2,18,22 5:1
5:18,21,24 6:2
6:5,9,11,15,18
6:20 7:6,8,11
7:25 8:7,12 9:4
9:13,15,18
10:2,7,10,17
11:8,11,14,17

11:24 12:1
14:7,10 15:10
15:25 16:3,9
16:14,20,23
17:1,3,5 18:8
18:12 22:8,19
22:22 23:5,11
23:14,17,21,23
24:10,16,19,23
25:1,19 26:3,6
26:8 27:7,9,12
27:18,25 28:2
28:8,13,17,22
28:24 29:6,20
29:25 30:7,10
30:12,15,18,22
30:24 31:6
35:2,7,11,15
38:19 39:1,8
39:12,15 40:6
42:9,13 43:20
43:23 44:4,7
44:11,14,17,22
44:25 45:7,11
45:13,17,21
47:13,15 49:3
49:6,9,12,15,18
49:24 50:2,5
50:10,13 51:13
51:16,19
**sides** 51:19,22
**sidley** 3:3
**signature** 52:8

**significant** 11:2
  28:6
**similar** 14:17
**simply** 13:15
  48:16
**sinai** 31:10,11
**singular** 26:12
**sit** 17:7
**site** 20:4
**sitting** 49:12
**six** 7:21 49:22
  49:22,23
**skillfully** 42:21
**small** 15:14
**soil** 12:23
**something's**
  8:9
**somewhat**
  33:14
**sorry** 11:23
  19:20 34:21
  36:13 40:11
  43:21
**sort** 7:1,23 8:4
  13:10 14:13
  19:8,24 29:15
  37:24
**sorts** 5:16 8:24
  15:13
**sound** 30:13,15
  44:16
**sounded** 36:15
**source** 33:4

**sourced** 6:6
**sources** 7:9
  15:14 34:7
**south** 3:5
**spanking** 36:24
**speak** 13:2
**speaking** 41:2
**specific** 26:21
  32:9,18 33:22
  33:24 41:4
  42:23 44:1,11
  45:5
**specificity** 32:7
**specifics** 33:9
**spectrum** 37:24
  37:25
**split** 51:22
**spoke** 31:14
**stage** 30:21
  38:5 46:19
  51:3,3
**stale** 36:5
**stand** 31:15
**standard** 19:4
**standing** 47:25
  48:2 49:1
**start** 5:9
**started** 43:24
**statement** 5:14
  5:15 9:22
  10:21 13:22
  15:1,2 17:24
  18:1,1,5,20
  32:5 36:18

  41:14,19
**statements**
  15:17 21:2,5
  29:12 36:3
  37:4 39:6 41:5
  41:16,20
**states** 1:2,14
**statistically**
  28:6
**statute** 19:4
**stay** 40:10,10
  43:9
**steps** 17:24
  18:3 19:22
**stock** 4:12 10:5
  14:24 18:2
  22:4 42:14,25
  43:6,13 46:2
**stocks** 46:6
**stop** 49:14,14
**stopping** 49:4
**stories** 9:2
**story** 7:19 8:17
  8:18,23
**straight** 15:23
**straightforward**
  11:21
**strand** 2:19
  52:4,10
**street** 1:16 2:21
  3:5 52:14
**stuck** 51:2
**studied** 37:3

**studies** 37:4
**study** 37:15
  42:21,22 45:25
  45:25 46:1,4
  46:11 48:1
**stuff** 19:16,18
  47:4
**stupid** 30:15
**subject** 24:20
  25:3
**substances**
  12:24
**substantial**
  25:23
**successful** 41:6
**sufficient** 23:7
  27:20 44:7
**suggest** 4:19
**suggesting**
  39:12
**suggests** 4:22
  35:4
**suite** 2:21 3:14
  52:14
**suits** 32:25
**support** 39:10
**supposed** 16:1
  16:3
**supposedly**
  41:9
**supreme** 36:19
**sure** 13:11
  18:18 20:1,23
  23:13 24:10

27:19 32:8
33:10 34:4
35:10 36:10
38:6 40:13
45:10
**survived** 40:23

**t**

**t** 52:2,2
**take** 15:12 21:5
21:15 46:7
50:21 51:23
**taken** 30:20
46:14
**takes** 17:11,14
22:5
**talc** 9:1,11,24
10:23 15:15
20:1,2,17 21:3
32:13 33:21
34:21,25 35:4
35:5 40:17,18
41:6
**talk** 17:23 22:9
41:3 42:5
47:21
**talked** 40:16
42:9
**talking** 24:11
24:13,24 25:22
31:13 43:24
**talks** 10:25
19:7,8 24:21
33:3 36:19

**tell** 5:18 37:16
44:14 46:4
47:15
**telling** 8:10
**tells** 21:13
**ten** 43:13
**terms** 4:11 38:7
**test** 19:24 33:5
48:6
**tested** 12:23
**testify** 31:17
**testimony**
26:25
**testing** 31:20
31:22 33:2
34:22,23 41:6
41:6,14,22
**tests** 34:24
**thank** 26:5
33:12 45:19,20
45:23 51:18,19
**theory** 7:15
19:12,13 22:19
23:19 25:21
51:12
**thing** 13:21,25
22:3 42:24
50:15,24
**things** 7:23
8:25 14:11
15:19 30:20
32:17 37:4
43:2 47:5

**think** 5:10 7:21
8:6,8 10:7,7
14:15,16 19:1
19:7,9,21,23
20:2 24:23
29:14 30:18
32:19 36:13,14
37:20 38:2,8
40:1,14 41:10
41:13 42:20
45:2 46:10,10
47:17,18 50:16
**thinks** 40:22
**third** 1:3,15
21:7 28:13
**thoroughly**
17:12
**thousands** 20:9
26:23 27:5
**threatening**
25:22
**three** 17:2,3,5
17:24 18:2,3
37:11 41:2,5
47:5
**time** 6:9 7:12
9:5,6 15:18
16:19,23 24:5
24:16 25:1
27:2,12 29:18
35:8 40:12
44:8 51:13
**times** 25:8

**tired** 43:3
**today** 26:12
40:17 47:5,25
51:20
**told** 31:11,22
**ton** 23:10 25:20
**tone** 43:5
**tons** 19:16
**took** 25:23 51:5
**totally** 29:20
**toward** 25:24
**toxic** 12:7,24
13:5,16 25:7
**trading** 17:15
17:15 21:19
**transaction**
14:20,21,22
15:3
**transcribed**
2:19
**transcriber**
52:11
**transcript**
51:21,23 52:4
**treats** 14:13
**trial** 7:4,18
11:5,5 22:1
27:4 29:5,5
34:15,17 35:25
37:9 38:15
48:10
**trials** 7:5 21:16
29:13 31:13,17
34:18 35:22,23

**[tried - webpage]** Page 20

**tried** 9:21,22
    33:2
**true** 31:8,8
    43:8 52:5
**truly** 38:7
**truncated**
    48:12
**truth** 11:12,18
    35:20
**try** 10:4
**trying** 30:5,12
    44:15 45:1
**turn** 5:22
**twenty** 43:8
**two** 5:1 6:20
    12:22 13:7
    14:11 17:25
    20:18 31:9,25
    40:15 41:13
    43:2
**types** 32:25

**u**

**u.s.** 1:25
**ultimately**
    21:23
**um** 10:2 12:8
    13:3 20:11
    23:21,23 24:25
    40:19 41:7
    44:3,6 45:6
**unbundle**
    42:18

**undeniably**
    51:11
**under** 9:25
    15:23 23:7
    26:14 29:16
    31:1 33:10
    41:20 51:24
**underlying**
    15:3
**undermines**
    7:13
**underneath**
    41:13
**understand**
    4:18 7:11
    10:11 12:3
    16:24 21:8
    23:17 25:19
    27:25 29:20
    35:14 44:25
    49:9
**understanding**
    45:11
**understated**
    15:8
**understood**
    30:9 38:10
    39:17 43:23
    46:7
**underway**
    31:14
**uniform** 17:18
**uninjured** 50:8

**united** 1:2,14
**university**
    31:23
**unpublished**
    37:4
**unsearchable**
    27:5
**unsurprisingly**
    31:16
**untitled** 27:5
**use** 17:6 24:13
    33:5 34:3
**used** 12:11
    24:12,12 29:14
    31:19 42:13
    45:8
**using** 10:13
    24:11

**v**

**v** 1:10 4:4
**valuable** 31:9
**value** 23:8
**variety** 15:9
**various** 10:11
**vehemently**
    34:14
**verdict** 10:8
    11:4,4
**verdicts** 35:24
**versus** 35:23
    46:8
**view** 6:6,12
    23:7 25:2 27:1

**volume** 11:1

**w**

**want** 5:9 6:9
    8:8 11:23 12:2
    12:3 17:3
    22:19 26:18
    27:21 28:22
    46:15 47:3
    49:9
**wanted** 16:24
    50:5
**wanting** 40:11
**waste** 12:7
**watch** 21:25
**watching** 19:16
**waved** 37:10
**way** 13:18
    14:18 16:18
    17:8,22 18:8
    18:10,13,21
    19:5,12,13
    23:20 29:25
    42:1 43:25
    45:3 47:20,20
    49:19,24 50:24
**wayback** 20:4
**we've** 23:10
    34:22 38:17,22
    38:22,23 40:16
    46:14 47:11
    48:22
**webpage** 37:15

**[website - zero]**                    Page 21

| website 15:16 | x |
| --- | --- |
| 20:1,2,17,24 | **x** 1:4,13 31:20 |
| 37:5 38:16 | **xyz** 39:3 |

| | y |
| --- | --- |
| **websites** 7:3 | **yeah** 5:20 6:17 |
| 21:1,3,15 | 6:19 7:10 8:11 |
| **welcome** 26:8 | 12:16,19,21,25 |
| **went** 7:1 20:4 | 13:6 16:8,20 |
| 29:3 31:14 | 17:4 25:25 |
| 45:14 | 29:6 40:9,11 |
| **west** 3:13 | 44:22 49:6,11 |
| **whatever's** | 49:17 50:4,12 |
| 48:16 | **years** 12:22 |
| **wide** 17:10 | 34:3 35:18 |
| 23:3 46:3,3 | **yep** 6:14 16:2 |
| **win** 11:4,5,5 | 24:25 |
| **wolfson** 40:15 | **yesterday** 46:4 |

| **won** 35:23 | z |
| --- | --- |
| **word** 24:11,12 | **zero** 19:14 22:7 |
| 24:12,13 29:15 | 50:21 51:11,11 |

**words** 25:5
**work** 18:20
   19:5 25:18
   35:16,17 45:15
   48:18
**works** 8:17
   14:19 17:9,22
   19:12,13
**world** 10:18,21
   19:15 28:20
**worthy** 22:23
**written** 41:1
**wrong** 44:14
**wrote** 41:2

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.

## <u>CERTIFICATE OF ACCURACY</u>

In accordance with the Procedures for Filing a Transcript of Oral Argument, I certify that the foregoing transcript has been reviewed by counsel for both parties and is accurate.

Date: March 25, 2025

Respectfully submitted,

*/s/ Neil H. Conrad*

Neil H. Conrad
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
nconrad@sidley.com

*Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

On March 25, 2025, I caused the foregoing transcript of oral argument to be filed electronically using the Court's CM/ECF system. I certify that all participants in the case are Filing Users and that service will be accomplished electronically by the Notice of Docket Activity in accordance with Third Circuit Local Appellate Rule 113.4.

Date: March 25, 2025

Respectfully submitted,

*/s/ Neil H. Conrad*

Neil H. Conrad
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
nconrad@sidley.com

*Counsel for Defendants-Appellants*